LAWRENCE-LYNCH CORP. vs. DEPARTMENT OF
ENVIRONMENTAL MANAGEMENT.

Barnstable. April 4, 1984. — August 9, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

Contract, Public works, Modification.

Where the contractor on a project for restoration of a sea wall failed to follow
certain unambiguous provisions of its contract with the Department of
Environmental Management requiring it to provide written statements
as to any extra work authorized orally by the department, the contractor
was not entitled to payment by the Commonwealth for such extra work.
[684-686]

CIVIL ACTION commenced in the Superior Court Department
on April 6, 1981.

The case was heard by Irwin, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

Christopher H. Worthington, Assistant Attorney General,
for the defendant.

Edward W. Kirk for the plaintiff.

O'CONNOR, J. Lawrence-Lynch Corp. (contractor) entered
into a contract with the Department of Environmental Manage-
ment (department). The work included restoration of three to
four hundred feet of a sea wall on Gallops Island in Boston
Harbor. After completion of the project, the contractor com-
menced an action against the department seeking payment for
added expenses incurred while performing certain extra work
required to restore the sea wall. Following a jury-waived trial,
a judge of the Superior Court entered judgment for the contrac-
tor, holding that provisions of the contract requiring written
approval of the extra work had been waived by the department.
The Appeals Court affirmed this judgment. *Lawrence-Lynch*

*Corp.* v. *Department of Envtl. Management,* 17 Mass. App. Ct. 954 (1983). We granted the department's application for further appellate review. We reverse the judgment of the Superior Court because the contractor failed to follow certain contractual procedures for seeking compensation for claims for extra work not authorized by the department in writing.

Work began on the contract on November 5, 1979. The contract provided that the supporting "fill" to be used in restoring the sea wall would be taken from the intertidal zone immediately adjacent to the wall. The trial judge found that "[i]n December, 1979, a dispute arose concerning the fill. The [contractor] contended that it was unable to use the intertidal zone fill contemplated in the contract and would be required to obtain the fill from a source not specified in the contract. At that time the [department] insisted that the fill be provided as required in the written specifications of the contract. This impasse between the [contractor] and the [department] continued until just prior to the completion date of the contract, which was July 1, 1980. At approximately the second week of June, the [department] through its agent, [the project engineer], authorized the [contractor] to obtain the fill from a site approximately 600 yards from the area specified in the contract. This authorization was given verbally to . . . the [contractor's] construction superintendent. The [department] likewise at that time urged the [contractor] to complete the contract work as per schedule. Pursuant to that authorization the [contractor] completed the work required in the contract . . . ." This case arises from the department's refusal to reimburse the contractor for the additional expenses incurred in obtaining the fill 600 yards away from the sea wall and transporting it to the wall.

The provisions of the contract pertaining to extra work and modifications of the contract are found in Article XVI of that document.[1] The interpretation of an unambiguous contract is a question of law for the court. *Sparks* v. *Microwave Assocs.,* 359 Mass. 597, 600 (1971). Article XVI, par. (b), pro-

---

[1] The provisions of Article XVI are reproduced in an appendix following this opinion.

vides: "Any addition to, deduction from or modification of the plans, specifications or contract shall be deemed to be a change in the plans, specifications or contract." Paragraph (c) of Article XVI provides: "Subject to all provisions of the contract, the Contractor shall do any and all work required to effect a change in the plans, specifications or contract only when and as directed by: (1) a written authorization for a change in the plans, specifications or contract; or (2) an approved formal change order executed by the Department."

The contractor and the department did not make an "addition to, deduction from or modification of the plans, specifications or contract," and therefore did not make a "change" in the plans, specifications, or contract. The contract remained intact; what occurred was a minor deviation from the terms of the contract. Accordingly, the requirement in paragraph (c), that work be performed only as directed by "a written authorization" or "an approved formal change order executed by the Department," does not apply to the extra work performed by the contractor.

The contract also incorporated the provisions of G. L. c. 30, § 39I, inserted by St. 1960, c. 771, § 1A. That statute provides in pertinent part that "[n]o wilful and substantial deviation from . . . plans and specifications [of a contract for the construction, alteration, maintenance, repair or demolition of, or addition to, any public building or public works for the Commonwealth, or of any political subdivision thereof] shall be made unless authorized in writing by the awarding authority or by the engineer or architect in charge of the work who is duly authorized by the awarding authority to approve such deviations." The department has conceded that "[t]he direction to haul from the new location 600 yards away could not be reasonably considered to be such a deviation from the plans and specifications to justify a change order. Rather, the change was of a minor nature not requiring a formal change in the document, falling within the project engineer's discretion, and taken for the convenience of the contractor." Thus, the provisions of G. L. c. 30, § 39I, which require a written authorization for substantial deviations from a contractor's plans and specifications, did not apply to the extra work on the sea wall.

In enacting G. L. c. 30, § 39I, the Legislature determined that the public interest could best be protected by requiring that *substantial* deviations from the plans or specifications of a contract be authorized in writing. Minor deviations from the plans or specifications, however, may be authorized orally. In this case, the department conceded that the project engineer had authority to direct the contractor to obtain the fill 600 yards from the sea wall.

The Commonwealth is protected from excessive extra costs for this work by other provisions in Article XVI which insure that the department is aware of the nature and extent of the additional claims and has an opportunity to monitor the extra work. Paragraph (g) of Article XVI provides: "If the Contractor claims compensation for a change not ordered as aforesaid, . . . he shall on or before the first working day following commencement of any such work . . . submit to the Architect, the Clerk of the Works and the Department a written statement of the nature of such work . . . . Any work performed . . . prior to the time specified above, even though similar in character, will not be considered as warranting compensation, it being clearly understood that the commencement of any such work . . . will be recognized only when and as submitted in writing in accordance with the requirements of this Article." Paragraph (h) of the same article further provides: "On or before the second working day after the commencement of such work . . . and daily thereafter, the Contractor shall file with the Clerk of the Works, the Architect, and the Department, in such form and manner as is satisfactory to the Department, itemized statements of the details and cost of such work performed . . .; and unless such statements shall be made as so required, his claim for such compensation shall be forfeited and invalid; and he shall not be entitled to payment on account of any such work . . . ."

The contractor does not contend that it submitted a written statement of the nature of the work performed or itemized statements of the details and cost of the extra work as required by Article XVI, paragraphs (g) and (h). The contractor concedes that its claim for the extra work was submitted "subse-

quent to the completion date" of the project. We conclude that by failing to submit the written statement of the nature of the work and the itemized statements of the details and cost of the work in a timely manner, the contractor lost its claim for the extra compensation.

The contractor argues that the claim it submitted after completing the work was properly submitted under the provisions of Article XVII. That article, however, provides for price adjustments "for a *change* in the plans, specifications or contract ordered in accordance with Article XVI" (emphasis added). We have already seen that there was no change in the plans, specifications, or contract. Instead, the extra work was performed in the absence of such a change.

The contractor does not argue that the provisions of Article XVI, paragraphs (g) and (h), were waived. The contractor states that paragraphs (b), (c), and (d)[2] of Article XVI "are the portions of the contract which . . . are pertinent to the issue of waiver." The contractor contends that the procedures and timetables specified in paragraphs (g) and (h) apply only to changes undertaken unilaterally by the contractor or to "substantial deviations." We disagree.

Paragraphs (g) and (h) apply to "compensation for a change not ordered as aforesaid." The language "not ordered as aforesaid" refers to the preceding paragraph (c), which requires a written authorization or an approved formal change order for any work required to effect a change in the plans, specifications, or contract. Paragraph (c) thus would encompass substantial deviations from the contract, which require written authorization in accordance with G. L. c. 30, § 39I. A substantial deviation would be "ordered as aforesaid" in paragraph (c) or would be unenforceable because of G. L. c. 30, § 39I, and paragraphs (g) and (h) do not apply to such deviations. The contractor correctly asserts that these paragraphs regulate changes undertaken unilaterally by the contractor, but the paragraphs also regulate changes such as the one at issue here,

---

[2] Paragraph (d) of Article XVI refers to additions or deductions to the contract price following a change in the plans, specifications, or contract.

where the contractor made a minor deviation from the contract without securing written authorization. Finally, we reject the contractor's contention that a letter mailed five months before the extra work was performed could satisfy the requirements of paragraph (g), or that the burden is on the department to "ke[ep] track of what the Contractor was doing" in paragraph (h).

Substantial deviations from the plans, specifications, or contract must be authorized in writing, as required by G. L. c. 30, § 39I. The contract also requires that actual changes in the plans, specifications or contract itself must be authorized in writing or by an approved formal change order executed by the department. Minor deviations, such as the one at issue here, may be orally authorized, but to insure that the department is fully aware of the nature and cost of any extra work, paragraphs (g) and (h) of Article XVI of the contract require the contractor to submit daily written statements concerning the work to the department. The contractor failed to comply with that requirement and is not entitled to reimbursement for the cost of its extra work. See *D. Federico Co. v. Commonwealth,* 11 Mass. App. Ct. 248, 252-253 (1981).

*Judgment of the Superior Court reversed.*

### APPENDIX.

### ARTICLE XVI

"(a)  Attention is directed to General Laws, Chap. 30, Sec. 39I, as inserted by Sec. 1A of Chap. 771, Acts of 1960. (Quoted in full in Article II, Page 16).

"(b)  Any addition to, deduction from or modification of the plans, specifications or contract shall be deemed to be a change in the plans, specifications or contract.

"(c)  Subject to all provisions of the contract, the Contractor shall do any and all work required to effect a change in the plans, specifications or contract only when and as directed by: (1) a written authorization for a change in the plans, specifications or contract; or (2) an approved formal change order executed by the Department.

"(d) If such change shall make the work less expensive to the Contractor, the proper deduction shall be made from the contract price, said deduction to be computed in accordance with the provisions of Article XVII unless there be applicable unit prices established by the contract, in which event the unit prices shall prevail. The Contractor shall have no claim for damages or for anticipated profits on the work that may thus be dispensed with. If such change shall make the work more expensive to the Contractor, a proper addition computed in the aforementioned manner shall be made to the contract price. The amount of any deduction from or addition to the contract price as a result of a change in accordance with the provisions of this Article shall be determined by the Department.

"(e) The Contractor shall when requested by the Architect or the Department and in a form satisfactory to them furnish itemized statements of the cost of the work so ordered, including certified payrolls and copies of accounts, bill and vouchers relating to said changes in plans, specifications or contract.

"(f) Any Change Order issued subject to the provisions of Chapter 30, Sec. 39I involving a substantial deviation from the plans, specifications or contract shall be executed by the Department within thirty days from the date of the initial written authorization by the Department.

"(g) If the Contractor claims compensation for a change not ordered as aforesaid, or for any damages sustained, he shall on or before the first working day following commencement of any such work or sustaining of any such damage submit to the Architect, the Clerk of the Works and the Department a written statement of the nature of such work or damage sustained. Any work performed or damages sustained prior to the time specified above, even though similar in character, will not be considered as warranting compensation, it being clearly understood that the commencement of any such work or sustaining of any such damage will be recognized only when and as submitted in writing in accordance with the requirements of this Article.

"(h) On or before the second working day after the commencement of such work or sustaining of such damage, and daily thereafter, the Contractor shall file with the Clerk of the Works, the Architect, and the Department, in such form and manner as is satisfactory to the Department, itemized statements of the details and cost of such work performed or damage sustained; and unless such statements shall be made as so required, his claim for such compensation shall be forfeited and invalid; and he shall not be entitled to payment on account of any such work or damage."