LAWRENCE R. GLYNN, receiver, *vs.* CITY OF GLOUCESTER.

Middlesex.    December 12, 1985. — January 7, 1986.

Present: GREANEY, C.J., PERRETTA, & KASS, JJ.

*Contract,* Building contract, Public works, Modification. *Public Works,*
Extra work.

Failure by the city of Gloucester to provide a site for disposal of debris from
a road construction project, as required by its contract with the contractor
for the project, did not entitle the contractor to recover the cost incurred
in disposing of the debris, where the contractor had failed to follow the
procedure for presenting claims arising from "any act of omission or
commission" by a public agency set forth in the "Standard Specifications
for Highways, Bridges and Waterways" adopted by the Department of
Public Works and expressly made part of the contract. [392-394]

The contractor on a road contruction project under a contract with the city
of Gloucester providing that the contractor would excavate fill from an
area designated by the city's engineer was not entitled to recover extra
costs incurred because the site selected by the engineer for excavation
contained material which was unsuitable for fill because of its rocky
nature, where the contractor had failed to comply with the contract
provisions for presenting claims for extra work. [394-395]

The contractor on a public works project under a contract with the city of
Gloucester was not entitled to recover for extra work which became
necessary when the contractor encountered subsurface conditions differ-
ing from those predicted by the test borings furnished by the city to all
bidders on the contract, where there was nothing to support a conclusion
that the city had either negligently or intentionally misrepresented the
subsurface conditions, and where the contractor had failed to follow the
contract provisions for presenting claims arising as a result of conditions
on the site materially different from those shown on the plan or indicated
in the specifications. [395-396]

Where the contractor on a road construction project under a contract with
the city of Gloucester had failed to follow required procedures for pre-
senting claims for extra compensation, the contractor was not entitled
to recover on the claims either on a theory that the claims arose from
the city's "breaches of contract" or that the city had failed to act in good
faith with respect to the claims. [396-398]

CIVIL ACTION commenced in the Superior Court on July 23, 1976.

Following the decision of this court in 9 Mass. App. Ct. 454 (1980), the case was heard by *Joseph S. Mitchell, Jr.,* J., on a master's report.

*Charles P. Burgess* for the plaintiff.

*Edward F. Vena* for the defendant.

GREANEY, C.J. Although we thought that our opinion in *Glynn* v. *Gloucester,* 9 Mass. App. Ct. 454 (1980), might bring this controversy to an end, we find the case back again, some twelve years after the work on the road construction project involved in the dispute was completed, and more than nine years after the lawsuit was commenced. A good deal of the delay has come about as a result of the reference of the case to a master, an event which, to quote Dickens, bogged the case down "in one of the ten thousand stages of an endless cause."[1] The following recital will bring the reader up to date. The case involves claims by the receiver of a construction contractor, R. & J. Salvucci Corporation, for the recovery of additional compensation which the receiver alleges is due in connection with Salvucci's building of a road at the Cape Ann Industrial Park in Gloucester. The background facts are set forth in our earlier decision, 9 Mass. App. Ct. at 455-456. In that decision, we concluded that the original master's report was insufficient to permit a court to decide the case, and we ordered the report recommitted to the master for supplementation. Two recommittals were necessary before a report adequate for judicial review was prepared by the master. Upon receipt of an adequate report, a judge of the Superior Court analyzed its findings and entered a judgment for the city. The receiver has appealed.

As noted in our earlier decision (9 Mass. App. Ct. at 455-456), the receiver sought additional compensation for: (1) the imposition of a charge for use of the city dump in violation of a contract provision that promised Salvucci a free disposal

---

[1] Charles Dickens, Bleak House 2 (M.D. Zabel ed. 1956). See also *Glynn* v. *Gloucester,* 9 Mass. App. Ct. at 462-463; *Joseph E. Bennett Co.* v. *Commonwealth, ante* 321 (1985).

site for inorganic debris; (2) the city's refusal to designate a suitable area for the excavation of usable gravel fill for the road's subgrade; and (3) an order that Salvucci rebuild the road's embankments after rocks buried in their sides had caused bulging slopes.[2] The master's findings of fact in connection with each of these claims are essentially undisputed. "[O]ur function on appeal, like that of the judge who ordered the entry of judgment, is to determine what disposition of the case is legally required by the master's findings. *Central Tow Co.* v. *Boston,* 371 Mass. 341, 342 n.3 (1976)." *D. Federico Co.* v. *Commonwealth,* 11 Mass. App. Ct. 248, 249 (1981).

1. *The disposal claim.* The contract required Salvucci to dump surplus inorganic debris "within four (4) miles of the job site as directed by the City of Gloucester, Department of Public Works." The project engineer directed Salvucci to take the unsuitable surplus material to the city dump. At the dump, the city informed Salvucci that it would have to pay $1.00 per cubic yard for all material brought for disposal. Salvucci estimated that it would have cost approximately $30,000 to dispose of the surplus material taken from the job site. As an alternative, Salvucci made arrangements for the use of a private dump by agreeing to improve an old road leading to that dump in exchange for disposal privileges. The master found that, under this arrangement, Salvucci had incurred reasonable expenses of $10,622.70, and he included that sum in his award of damages to the receiver.

Paragraph 7.16 of the "Standard Specifications for Highways, Bridges and Waterways" adopted by the Commonwealth's Department of Public Works (the Bluebook) is set forth in pertinent part in the margin.[3] This, and the other provisions

---

[2] This claim also included an assertion that the city had misrepresented the subsurface soil conditions on the plans.

[3] "All claims of the Contractor for compensation other than as provided for in the contract on account of any act of omission or commission by the [city] or its agents must be made in writing to the Engineer within 1 week after the beginning of any work or the sustaining of any damage on account of such act, such written statement to contain a description of the nature of the work performed or damage sustained; and the Contractor shall, on or

of the Bluebook, were expressly made parts of Salvucci's contract. The city's failure to provide a disposal site, as required by the contract, was an "omission" within the meaning of paragraph 7.16.[4] That omission required Salvucci before "sustaining . . . any damage" to follow the specific notice and claim procedures spelled out in paragraph 7.16.[5] That provision further indicates that a failure to follow its procedures mandates that the contractor's "claim for compensation shall be forfeited and invalidated, and he shall not be entitled to payment on account of any such work or damage." See also G. L. c. 30, § 39I, inserted by St. 1960, c. 771, § 1A. In *Marinucci Bros.* v. *Commonwealth,* 354 Mass. 141, 144-145 (1968), it was held that a claim against a public agency by a contractor for extra compensation which had not been properly perfected under a provision practically identical to paragraph 7.16 was barred.[6] See also *Lawrence-Lynch Corp.* v. *Department of Environmental Management,* 392 Mass. 681, 684-685 (1984).

---

before the 15th day of the month succeeding that in which such work is performed or damage sustained, file with the Engineer an itemized statement of the details and amount of such work or damage and unless such statement shall be made as required, his claim for compensation shall be forfeited and invalidated, and he shall not be entitled to payment on account of any such work or damage. Such notice by the Contractor and the keeping of costs by the Engineer shall not in any way be construed as proving the validity of the claim."

[4] As noted in *Glynn* v. *Gloucester,* 9 Mass. App. Ct. 457 n.2 "[t]he city's twelfth objection [to the original master's report], while conceding that the attempted charges for disposal of inorganic materials violated the contract, indicates that any problem with this aspect of the contract may have been a misunderstanding which, when called to the city's attention, was immediately corrected."

[5] Paragraphs 17 and 22 of the "General Conditions" of the contract set forth the method by which extra costs and expenses incurred in connection with work under the contract could be adjusted.

[6] In the *Marinucci* decision, the omission giving rise to the claim was caused by the Metropolitan District Commission, which had revoked its permission to the Commonwealth's Department of Public Works for the contractor's disposal of materials dredged from a river at a site controlled by the commission. As the decision makes clear (at 145), the fact that a third party causes the omission does not create a distinction which would aid Salvucci here.

The master made no finding that Salvucci had complied with paragraph 7.16 and other related contract provisions, see note 5, *supra*. (It was admitted at oral argument that no such compliance had occurred.) The city did not waive compliance.[7] It follows that "the failure of the contractor to make a timely claim in writing based on [the city's] omission and an itemized statement setting forth the details of . . . damage incurred results in a forfeiture of its claim." *Marinucci Bros.* v. *Commonwealth, supra* at 145.

2. *The road fill claim.* Included in the contract was a provision that "approximately 35,000 cubic yards of fill [would] be required in addition to the excavated material within the normal roadway to complete the roadway embankment." This material was to be excavated from areas adjacent to the roadway as designated by the city's engineer. The master found that the site selected by the engineer for excavation of the fill contained material which was unsuitable because of its rocky nature. The engineer refused Salvucci's request to designate a more suitable area and suggested that Salvucci use expensive hand labor to make the fill usable. Instead, Salvucci procured a screening machine, incurring an additional expense of $182,384.35 for the machine's use. The master awarded this sum to the receiver as damages.

This claim was one for extra work, which fell within paragraphs 17 and 22 of the "General Conditions" of the contract. Paragraph 22 provides that "[n]o claims for extra work or cost shall be allowed" unless it had been submitted in writing and approved by the engineer and owner, and processed in accordance with paragraph 17. As we pointed out in *Glynn* v. *Gloucester,* 9 Mass. App. Ct. at 460: "On a public construction contract, if actions or requirements of the public agency necessitate changes in the work as it progresses, thereby causing the

---

[7] The master found that "[t]he only waiver by the [c]ity or its representatives of the terms of the contract relating to notice, submission of claims, and submission of computations with respect to claims for extras occurred in December of 1972 when the [c]ity's engineer advised Salvucci to defer submitting its claim with respect to the installation of the binder coat on the roadway."

contractor to perform extra work or incur added expense, . . . the contractor must follow the procedures spelled out in the contract . . . to adjust the price before unilaterally accruing expenses to be pursued later on breach of contract or quantum meruit theories." This is settled law. See *Lewis* v. *Commonwealth,* 332 Mass. 4, 5-7 (1954); *Chiappisi* v. *Granger Contr. Co.,* 352 Mass. 174, 177-178 (1967); *Marinucci Bros.* v. *Commonwealth,* 354 Mass. at 144-145 (1968); *State Line Contractors, Inc.* v. *Commonwealth,* 356 Mass. 306, 317-319 (1969); *Lawrence-Lynch Corp.* v. *Department of Environmental Management,* 392 Mass. 681, 684-685, 686 (1984); *D. Federico Co.* v. *Commonwealth,* 11 Mass. App. Ct. 248, 252-253 (1981). The master's finding that Salvucci "submitted no written claim to the [c]ity . . . for the extra costs [of the screening machine] . . . with the first estimate after such costs were incurred," as was required by paragraph 22, precludes recovery on this claim in the absence of a finding that the city had waived compliance with the contract procedures. There was no such finding.[8]

3. *The slope grading claim.* The master awarded the receiver $50,000 for expenses incurred by Salvucci for reworking the slopes of the road. The reworking became necessary when Salvucci encountered subsurface conditions which differed from those predicted by the test borings furnished by the city to all bidders. The unforeseen materials included large rocks and boulders unearthed during the excavation of the roadway. The engineer told Salvucci to bury the rocks and boulders in the road's embankments. That order resulted in bulging embankments. As a result, Salvucci was compelled to rebuild them to correct this shape.

Although the master found that Salvucci had relied upon the results of the city's test borings, and that the test borings had misrepresented actual subsurface conditions, there was no finding that would support a conclusion that the city had negligently or intentionally misrepresented the conditions. It is conceded

[8] The master's finding that the city was "aware" that Salvucci was doing extra work and had rented the screening machine would not support a finding of waiver. See *Glynn* v. *Gloucester,* 9 Mass. App. Ct. at 462 n.10.

that the test borings furnished by the city to all interested parties were properly made and that the results disclosed that the subsurface materials were adequate for use in the project. There is no finding that the city expressly or impliedly warranted the accuracy of the results of the test borings. Salvucci was apparently content to rely on the city's estimates rather than go to the trouble of taking its own test borings.

In these circumstances, there can be no recovery by the receiver on the grounds of deceit, mistake or breach of warranty. Salvucci was, therefore, referred to its remedies under the contract. Paragraph 21 of the "General Conditions" specifically establishes a procedure for relief when "the [c]ontractor encounter[s] subsurface and/or latent conditions at the site materially differing from those shown on the [p]lans or indicated in the [s]pecifications." See also G. L. c. 30, § 39N, inserted by St. 1972, c. 774, § 4; *Glynn* v. *Gloucester,* 9 Mass. App. Ct. at 460 n.8. Read together with paragraphs 17 and 22 of the "General Conditions," paragraph 21 provided a basis for an equitable price adjustment to compensate Salvucci for the extra work performed as a result of the unexpected conditions. Salvucci's admitted failure to follow the contract procedures for an equitable adjustment (there again being no basis in the master's report to support a conclusion that the city had waived these procedures) precludes recovery.[9]

4. *Remaining arguments.* The other theories urged by the receiver to justify extra compensation must also be rejected.

---

[9] The decisions relied upon by the receiver do not support recovery on any of the claims. *Lawrence-Lynch Corp.* v. *Department of Environmental Management,* 392 Mass. 681 (1984), clearly indicates (at 686) that "to insure that the [owner] is fully aware of the nature and cost of *any* extra work" (emphasis supplied), it is necessary for the the contractor to comply strictly with the notice, claim and adjustment provisions of the contract or run the risk of losing its entitlement to reimbursement for extra work. In *White Constr. Co.* v. *Gloucester,* 14 Mass. App. Ct. 1004, 1006 (1984), recovery was allowed to the contractor where there was a tenable master's finding that "White had complied with all the applicable claims procedures of the contract necessary to preserve the contract price adjustment dispute for arbitration." As discussed, there was no compliance with the contract procedures in this case and no waiver of those procedures.

(a) Simply because the master labelled the contractor's claims "breaches of contract" does not mandate recovery. The question whether the city had committed a true breach of the contract that justifies an award of damages (notwithstanding the municipal finance law, G. L. c. 44, § 31, as appearing in St. 1946, c. 358, § 23, see generally *Thomas O'Connor & Co.* v. *Medford,* 16 Mass. App. Ct. 10, 11-14 [1983]) was a question of law reserved on the facts to the court deciding the case.

(b) We agree with the receiver that contractor's invocation of remedies available under either the contract or applicable statutes such as G. L. c. 30, § 39N, must be addressed by the public agency in good faith. *Glynn* v. *Gloucester,* 9 Mass. App. Ct. at 460-461. As we said in that decision (at 461 n.9): "The adjustment remedies benefit both the contractor and the public agency. The agency customarily relies on the changed conditions and extra work clauses to remove unknown risks from competitive bidding and to obtain favorable bid prices stripped of such risk factors. Such a policy benefits the agency by keeping costs down and benefits bidders by assuring them that they can be compensated by formulae for overcoming sub-surface conditions and for extra work not anticipated in their bid estimates, or suggested by available data or by site inspection."

The master in this case made no express finding that the city had acted in bad faith. Assuming a finding of bad faith could be inferred from the master's general conclusion that the city had acted wrongfully, there still could be no recovery. The contract provisions contemplated compliance with its written notice and claim provisions within the time periods therein prescribed. These provisions called for initial action on claims by the city's field representatives and ultimate acceptance or rejection by the city as the project's owner. In the factual circumstances found by the master, only after a claim has been validly processed through the stages established by the contract, and the city has responded to the claim, could it be determined whether the city had acted in bad faith. At that point, an unjustified rejection of the claim would establish a true breach of contract for which Salvucci could be compensated in dam-

ages. Short of that, Salvucci's failure to follow the remedies established by the contract (and statutes governing public construction projects) compels the conclusion that the additional costs were incurred unilaterally at its own expense. Were it otherwise, the contractual and statutory framework for the resolution of disputed claims would be virtually meaningless.

The resolution of Salvucci's claims adverse to the receiver's positions obviates the need to consider whether Salvucci's written waiver of its claims was void as executed under the pressure of economic duress.

*Judgment affirmed.*