SUTTON CORPORATION *vs.* METROPOLITAN DISTRICT
COMMISSION.

No. 93-P-1765.

Middlesex. March 14, 1995. - July 21, 1995.

Present: Warner, C.J., Smith, & Jacobs, JJ.

Further appellate review granted, 421 Mass. 1105 (1995).

*Practice, Civil,* Master: findings. *Public Works,* Extra work. *Contract,*
Public works, Modification.

Where a contractor did not strictly comply with the written notice and
claim provisions of a public works contract and there was no valid
waiver of compliance with those terms, the additional costs required to
complete the construction due to unanticipated soil conditions were uni-
laterally incurred at the contractor's expense: the subsidiary findings of
a master did not support his contrary conclusion. [766-771]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 20, 1982.

The case was heard by *James F. McHugh,* J., on a
master's report.

*Christopher W. Morog,* Assistant Attorney General
(*James A. Sweeney,* Assistant Attorney General, with him)
for the defendant.

*Harvey B. Heafitz* (*Carol McKenna* with him) for the
plaintiff.

WARNER, C.J. Sutton Corporation (Sutton), a construction
and excavation contractor, brought an action in the Superior
Court against the Metropolitan District Commission
(MDC)[1] seeking payment for added expenses incurred dur-

---

[1]Sutton initially brought claims against Vibroflotation Foundation Com-
pany, the company that manufactured the sand drains, as well as Ge-
otechnical Engineers, Inc., and Somerville Engineers, Inc., two engineering
firms hired by the MDC to consult on subsurface conditions at the work
site. United States Fidelity and Guaranty was also a party. All of these
parties were dismissed prior to the determination of the case on the merits.

ing the completion of a public works contract for the installation of sand drains as part of site preparation relative to the project for the replacement of the General Lawrence Bridge in Medford. The case was referred to a master, "facts final," and the parties waived a jury. Following nine days of testimony and requests for findings by both sides, the master issued a final report deciding that Sutton had incurred additional expenses and costs beyond the original contract price for which the MDC was liable as a result of the conditions on the work site. Thereafter, both parties filed objections to the final report. A judge of the Superior Court denied all objections and confirmed the report, and Sutton was awarded judgment against the MDC in the amount of $346,903.72 plus costs. The MDC appealed the finding of liability under the contract. Sutton filed a cross appeal claiming the master's damage award was inadequate.

1. The subsidiary findings of the master are binding upon us unless they are "clearly erroneous, mutually inconsistent, unwarranted by the evidence before the master as a matter of law or are otherwise tainted by error of law." Mass.R.Civ.P. 53(h)(1), as amended, 386 Mass. 1242 (1982). Here, the MDC contests basic facts on appeal without first having filed below specific objections to any findings. Mass.R.Civ.P. 53(h)(2), as amended, 386 Mass. 1242 (1982). When a party makes objections to the findings, as allowed by Mass.R.Civ.P. 53(h)(2), the party must "clearly stat[e] the grounds for each objection and the relief sought."

The rule further provides that judicial review of a question of law that depends upon the evidence presented to the master requires the filing of "a transcript of so much of the proceedings before the master as is necessary to dispose of the objections adequately." Mass.R.Civ.P. 53(h)(3), as amended, 386 Mass. 1242 (1982). The filing of the transcript does not, however, eliminate the need to make the original objections clear and specific. As we said in *Libman* v. *Tuckerman*, 33 Mass. App. Ct. 341, 343 (1992), "The filing of the transcript permits an appellant to direct a reviewing

court (in the first instance, the trial court) to that transcript concerning points of objection." That also did not occur here.

The MDC's general objections were not sufficient, under the rule, to raise a challenge to the master's subsidiary findings of fact. See *Meehan* v. *North Adams Sav. Bank*, 302 Mass. 357, 363 (1939)(decided under earlier rule). Likewise, Sutton's objections, although containing specific references and requests for relief, only contest the master's ultimate conclusions regarding the damage award. Since there is no cognizable challenge to the master's subsidiary findings, we adopt the facts as set forth in his report. "[O]ur function on appeal . . . is to determine what disposition of the case is legally required by the master's findings." *D. Federico Co.* v. *Commonwealth*, 11 Mass. App. Ct. 248, 249 (1981). *Glynn* v. *Gloucester*, 21 Mass. App. Ct. 390, 392 (1986). See also *Melrose Hous. Authy.* v. *New Hampshire Ins. Co.*, 402 Mass. 27, 31 n.4 (1988).

2. We briefly summarize the master's pertinent factual findings. After commencing the site preparation, Sutton experienced unanticipated soil conditions in connection with the sand drain installation which made completion of the contract according to the preliminary bid virtually impossible. Sutton notified the MDC that it had encountered a changed condition under G. L. c. 30, § 39N, and requested the MDC to approve the use of a substitute construction method not contained in the original contract in order to complete the project. The MDC denied the existence of a changed soil condition and did not respond to Sutton's request for formal approval of a substitute method. Sutton sought, and the master awarded, added expenses of completing the project according to original contract specifications in the unanticipated soil conditions, including costs for added manpower and materials. The master denied Sutton's claim for additional damages relating to the removal and replacement of certain materials created by the continued use of the work method specified in the contract.

The master concluded that Sutton experienced a changed condition under G. L. c. 30, § 39N, based on the unantici-

pated difficulties in the performance of the machinery in the unexpected soil conditions.[2] A public authority is required to grant an equitable adjustment in the contract price where the subsurface conditions "differ substantially or materially from those shown on the plans or indicated in the contract documents or from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the plans and contract documents." G. L. c. 30, § 39N, inserted by St. 1972, c. 774, § 4. At the same time, "[o]n a public construction contract . . . if the contractor encounters materially different conditions from those predicted by the plans, specifications, preliminary borings and estimates, the contractor must follow the procedures spelled out in the contract . . . to adjust the price before unilaterally accruing expenses to be pursued later on breach of contract or quantum meruit theories." *Glynn* v. *Gloucester*, 9 Mass. App. Ct. 454, 460 (1980). *D. Federico Co.* v. *Commonwealth*, 11 Mass. App. Ct. at 252. See also *Glynn* v. *Gloucester*, 21 Mass. App. Ct. at 395, and cases cited. A contractor who fails to adhere to the strict claim provisions of a public works contract forfeits all rights to recovery of damages or extra compensation unless the agency waives compliance therewith or the contractor is excused from compliance. See e.g., *D. Federico Co.* v. *Commonwealth*, 11 Mass. App. Ct. at 252-253; *Skopek Bros., Inc.* v. *Webster Hous. Authy.*, 11 Mass. App. Ct. 947, 947 (1981) (discussing waiver). See also *D. Federico Co.* v. *New Bedford Redev. Authy.*, 9 Mass. App. Ct. 141, 143-144 (1980) (excuse found).

---

[2] The master's conclusion that Sutton experienced a changed condition when the system called for by the contract failed to accomplish the project as expected misinterprets G. L. c. 30, § 39N, and is incorrect as matter of law. The statute does not contemplate an equitable adjustment where machinery or a construction method does not measure up to past performance. Rather, its intent is to provide extra compensation where a contractor suffers damages on account of unexpected actual subsurface or latent physical conditions. We do conclude, however, that Sutton experienced a changed condition under § 39N, since the subsidiary findings support the conclusion that the actual soil conditions differed radically from those described in the contract plans. See *Glynn* v. *Gloucester*, 9 Mass. App. Ct. 454, 460 (1980).

Sutton's claim for extra costs and expenses beyond the original contract price caused by the unanticipated adverse soil conditions fell within the damages provision contained in Article XVIII of the contract.[3] See *Glynn* v. *Gloucester*, 9 Mass. App. Ct. at 460. The master expressly found that "Sutton did not submit to the MDC prior to April 20, 1982, a written statement of the details and amount of its damages resulting from the sand drain installation." Since it did not strictly comply with Article XVIII, Sutton can only recover if it shows that it was excused from compliance or that the MDC waived compliance with the notice and claim provisions by showing "clear, decisive, and unequivocal conduct on the part of an authorized representative of the agency indicating that it would not insist on adherence to the agreement." *Glynn* v. *Gloucester*, 9 Mass. App. Ct. at 462. See also *D. Federico Co.* v. *Commonwealth*, 11 Mass. App. Ct. at 253.

The master concluded that "Sutton's letter to the MDC . . . that it would be seeking damages . . . combined with the knowledge of the MDC through the personal observation of its representatives on the project of the problems that Sutton encountered during the installation of the sand drains, and the Complaint filed on April 20, 1982, constitute sufficient notice to the MDC of Sutton's claim." However, knowledge on the part of the public agency alone is not sufficient to support a finding that the agency waived strict compliance with the damage provisions of a public works contract or that compliance was excused. See *Glynn* v. *Gloucester*, 9 Mass. App. Ct. at 462 n.10. The master's finding that the MDC was aware Sutton was incurring additional expenses from extra work and intended to bring a claim for reimbursement

---

[3]"If the contractor claims compensation for extra work not ordered as aforesaid, or for any damage sustained, he shall, within one week after the beginning of any such work or of the sustaining of any such damage, make a written statement of the nature of the work performed or damage sustained to the Engineer, and shall on or before the fifteenth day of the month succeeding that in which any such work shall have been done, or any such damage shall have been sustained, file with the engineer an itemized statement of the details and amount of such work or damage. . . ."

does not, without more, support the conclusion that the MDC excused or waived compliance with Article XVIII. See *Skopek Bros., Inc.* v. *Webster Hous. Authy.*, 11 Mass. App. Ct. at 947.

The master also excused Sutton's failure to follow the claim procedures by concluding that it would have been futile for Sutton to have provided a detailed statement of costs and expenses because the MDC had already denied that a changed condition existed, citing as authority *D. Federico Co.* v. *New Bedford Redev. Authy.*, 9 Mass. App. Ct. 141. This conclusion cannot stand. *D. Federico Co.* v. *New Bedford Redev. Authy.*, *supra*, is distinguishable because the claim provision of the contract in that case only required the contractor to notify the public agency of the facts surrounding the alleged breach, but specifically provided that the contractor "need not detail the amount of the claim." *Id.* at 143 n.1. Additionally, the disputed claim in that case pertained to a line-item amount for protection and maintenance of traffic that the agency refused to pay; there was nothing more that the contractor could do once the agency rejected the request for payment for traffic maintenance. The case further recites that "[a]s requisitions proceeded, that category of work [for maintenance and protection of traffic] stayed in the breakdown of amounts to be paid, an *implicit acknowledgement* . . . of the plaintiff's reservation of right to draw down construction payments on account of it." *Id.* at 143 (emphasis added). In contrast, Article XVIII required that Sutton both notify the MDC of its claim and file an itemized statement of damages in order to fulfill its obligations under the contract. There certainly was no similar "implicit acknowledgement" of any reservation of a right to increased payment here.

Sutton was required document its damages even if it would have been "an exercise in futility." The situation here is analogous to that where a public agency commits what we

have referred to as a "true breach"[4] of contract, which occurs when the agency fails "to address the contractor's legitimate problems in good faith in an effort to formulate an adjustment of the price which will equitably compensate the contractor for bona fide extras." *Glynn* v. *Gloucester,* 9 Mass. App. Ct. at 460-461. Whether the claim involves an equitable adjustment under the contract or falls outside the contract, in both situations the contractor knows that all steps in pursuit of an adjustment of the contract price may be fruitless. Nevertheless, we decided in *Glynn* v. *Gloucester,* 21 Mass. App. Ct. at 397-398, that, even in a claim for a true breach, the contractor was required to comply with the written notice and claim provisions of the contract, which were nearly identical to the ones in the present case, before recovering above the contract price. "Were it otherwise, the contractual and statutory framework for the resolution of disputed claims would be virtually meaningless." *Id.* at 398. The same underlying policy applies to this case. "This statute [G. L. c. 30, § 39I] establishes a clear legislative policy that 'those who engage in public contracts . . . [must] act in strict accord with their undertakings. . . .' " *Glynn* v. *Gloucester,* 9 Mass. App. Ct. at 461, quoting from *Albre Marble & Tile Co.* v. *Goverman,* 353 Mass. 546, 549 (1968). The MDC had the right to monitor damages or added expenses as they accrued to protect against inflated project costs. See *Glynn* v. *Gloucester,* 9 Mass. App. Ct. at 461 n.9. See also *Lawrence-Lynch Corp.* v. *Department of Envtl. Mgmt.,* 392 Mass. 681, 686 (1984). Sutton's failure to follow the strict procedures for an equitable adjustment under Article XVIII and to perfect its claim for extra compensation by filing an itemized statement of damages means that it unilaterally incurred additional costs at its own expense. See *D. Federico Co.* v. *Commonwealth,* 11 Mass. App. Ct. at 252-253, and cases cited.

---

[4]"There is . . . a distinction between claims under a contract [equitable adjustments] and damages for a wrongful breach of that contract." *Thomas O'Connor & Co.* v. *Medford,* 16 Mass. App. Ct. 10, 13 (1983).

The master also concluded that Sutton suffered damages when the MDC failed to approve a substitute installation system as equal materials under G. L. c. 30, § 39M(*b*),[5] inserted by St. 1963, c. 842, § 1. Sutton's failure, however, to itemize losses and comply with the strict notice and claim provisions of Article XVIII, as discussed above, similarly precludes recovery for any such additional expenses caused by the lack of substitution, including the costs to remove and replace material which Sutton claims on its cross appeal. Even if the MDC's failure to substitute the new system constituted a "true breach," as Sutton contends, that failure does not excuse compliance with Article XVIII. *Glynn* v. *Gloucester*, 21 Mass. App. Ct. at 397-398.

*Judgment reversed.*

---

[5]"Every such act shall provide that an item equal to that named or described in the said specifications may be furnished; and an item shall be considered equal to the item so named or described if (1) it is at least equal in quality, durability, appearance, strength and design, (2) it will perform at least equally the function imposed by the general design for the public work being contracted for or the material being purchased, and (3) it conforms substantially, even with deviations, to the detailed requirements for the item in the said specifications."