Fremont-Smith, J.
This action, in which the plaintiff contractor seeks an equitable adjustment to the contract price for work which it performed for the defendant, was tried to the Court. Based on all the credible evidence, this Court makes the following findings, rulings and order for judgment.
In October 1991, the City hired Cullinan Engineering Co., Inc. (hereinafter “Cullinan”) to help it design a major improvement project at the City’s Ballard Street Landfill and, in response, Cullinan drafted the plans and specifications detailing the scope of the work. The substance of the Project was the excavation of a so-called “sedimentation basin” at the existing landfill in the specific area indicated on the plans and specifications.
The contract was put out to bid pursuant to the public bidding statutes in April 1991 and all bids were rejected. Cullinan redrew the plans and specifications, relocating the “sedimentation basin," and the Project went out to rebid on or about November 1991. After the issuance of the invitation to bid, on November 19, 1991 the City relocated the sedimentation basin once more, and the Project was completed in accordance with this further relocation of the sedimentation basin. The final relocation of the sedimentation basin had not been indicated on the plans and specifications which were issued with the invitation to bid. On November 29, 1991, the bids were opened by the City, and West Valley, the low bidder, was awarded the contract.
The final relocation of the sedimentation basin caused West Valley to encounter subsurface conditions which differed from the subsurface conditions indicated on the contract plans and specifications, specifically:
a) removal of additional material which had not anticipated:
b) removal of additional boulders and ledge;
c) a change in elevation which plaintiff contends required dewatering and the build up of swale in certain areas (four to six feet) to accommodate a road.
The plaintiff seeks an equitable adjustment to the contract price for this additional work, based on M.G.L.c. 30, §39N, which provides:
If, during the progress of the work, the contractor or the awarding authority discovers that the actual subsurface or latent physical conditions encountered at the site differ substantially or materially from those shown on the plans or indicated in the contract documents either the contractor or the contracting authority may request an equitable adjustment in the contract price of the contract applying to work affected by the differing site conditions.
A request for such an adjustment shall be in writing and shall be delivered by the party making such claim to the other party as soon as possible after such conditions are discovered.
*673 Defendant asserts, however, that any extra work required by way of an equitable adjustment was to be paid for at the unit prices specified in the contract, and that defendant has done so. The Court agrees. The contract provides:
ADDITIONAL WORK
(a) The Contractor agrees to perform any work related to the Subject Matter of the contract, but not within the scope of the contract and its specifications, upon written order of the Contracting Officer, the payment for such extra work to be made in accordance with whichever of the following plans the Contracting Officer elects: (i) a price agreed upon between the parties and stipulated in the order for the extra work; (ii) a price based on the unit prices of the contract; (iii) a price determined by adding 15% to the reasonable cost of the extra work performed, such reasonable cost to be determined by the Contracting Officer in accordance with paragraph (b) below.
(b) The Contracting Officer may make alterations in the line, grade, plan, form, dimensions, or materials of the Subject Matter of the contract, or any part thereof, either before or after commencement of construction. Where such alterations increase the quantity or standard of the work to be done payment for such increase shall be made in the same way that payment is made for extra work under (a) and (b) above. Where such alterations diminish the quantity or standard of the work to be done, an adjustment shall be made to the benefit of the City based upon the emit prices where used or, where unit prices are not used, as the Contracting Officer shall determine.
This was a unit price contract, and in making its bid, West Valley estimated the costs it believed it would incur during the course of the construction. The terms of the contract clearly stated that for those items that were within the scope of the contract the unit price would prevail, “whether the required quantities are more or less than the amounts herein estimated without any change in the contract unit price,” and required that “[t]he unit price for each item must allow for all collateral or indirect costs connected with it."
Thus, while additional work was required, West Valley was paid for the 36" drain in the sedimentation basin which had been detailed as Item 243.30 in the bid documents. This allowed for 225 linear feet of pipe. West Valley bid this item at $40.00/lf. The contract price, before change, was $18,400 (225 x 40.00). West Valley was paid $20,400 for this pipe which included an additional 50/lf of pipe. It was also paid for the extra excavation that was required.
The contract bid provided an allocation for unclassified excavation (Item 120.1). West Valley bid $2.50/cy for Item 120.1. The contract estimated 15,600 cubic yards of unclassified excavation. The City determined that 20,050 cubic yards were removed. As part of the contract, the parties agreed that: Payment for Item 120.1 would be “made at the Contract Bid price per cubic yard and shall be measured in place as determined by the Engineer by means of measurement in the field or by survey cross-section before and after construction of the basin. The Owner shall supply these survey services only.” (P.E-3 of bid document.) The Owner, through Cullman’s engineers, determined that 20,050 cubic yards of “unclassified excavation” was removed by conducting an in place field measurement after the basin had been completed, and plaintiff was paid therefor accordingly.
Part of the unclassified excavation were boulders greater than ICY (see Item 144). However, because West Valley had penny bid that item, the City included this material as part of the unclassified excavation for which West Valley could bill at the unit price of $2.50/cubic yard, and plaintiff was paid therefor accordingly.
The City assumed that ledge would be encountered and estimated 450/cy as the quantity for the bid. The contract noted:
If ledge is encountered at an elevation above the designed bottom elevation of the basin, the Engineer shall instruct the Contractor whether the ledge shall be excavated under Item 144 or whether the shape of the basin will be modified to provide similar hydrologic characteristics.
Ledge was encountered at two separate locations within the basin: near the head where the swale enters the basin and near the base. Although additional ledge was encountered, defendant’s testimony was not disputed that it was located in a part of the basin location which had been originally contemplated, rather than in the relocated portion. As noted above, the plaintiff was paid for the amount of extra ledge and boulders encountered, as defined by the contract.
As it was not shown that the ledge and boulders would not have been encountered at all but for the relocation of the basin, there is no basis for an equitable adjustment which goes outside the contract unit prices agreed to, so as to permit the consequential damages for delay of completion alleged by plaintiff. See Sutton Corp. v. Metropolitan District Comm’n, 38 Mass.App.Ct. 764, 767-78 (1995); aff'd., 423 Mass. 200 (1996)[1] (where there were “changed conditions," a contractor was entitled to equitable adjustment at the contract price, but not to any additional, consequential damages).
West Valley’s claim that any dewatering was necessitated by the change in location of the basin was unproven, as there was no evidence to demonstrate that similar water would not have been encountered had the basin not been relocated.
*674 As for the swale, under the terms of the contract, any work done on the swale was to include “all excavation, embankment, compaction, labor, equipment and materials necessary to complete” the swale. (Item 281.050, 280.051.) The swale which was to be constructed was 1,845 linear feet. At one point, during a ten to fifteen foot section, West Valley did have to excavate more earth because the plans did not indicate the correct height of the embankment as it stood, but plaintiff was compensated for that removal at the unit price.
In short, plaintiff has failed to prove that it is entitled to any additional compensation under the contract.[2]
ORDER
Accordingly, it is ordered that judgment shall be entered for the defendant.

 Had it been shown that the relocation had resulted in totally unanticipated conditions, this Court might have considered a modification of the contract terms because of “mutual mistake,” and applied a quantum meruit measure of damages. In the circumstances, however, there is no justification for departing from the contract unit prices. Sutton, supra.

 In view of this finding of the Court, it is unnecessary to consider whether any delay in notification by the plaintiff constituted a waiver of its claim for an equitable adjustment.