van Gestel, J.
This matter is before the Court on the motion by the defendants Perini/Kiewit/Cashman, a Joint Venture (“PKC”), and Fidelity and Deposit Company of Maryland (“Fidelity”), seeking summary judgment pursuant to Mass.R.Civ.P. Rule 56. The case is a construction contract dispute involving the Cl 1A1 portion of the Central Artery/Tunnel Project (“CA/T’) in Boston (the “Project”), which is a public construction project.
It should be noted at the outset that the issues raised in the summary judgment motion relate solely to certain contractual notice requirements and a statutory commencement of suit limitation. Otherwise, the merits of any claims are not in issue here.
BACKGROUND
The following facts are not in dispute.
Contract Cl 1A1 includes the construction of interstate Highway 1-93 northbound from Kneeland Street to Congress Street, in Boston. Among other things, what is involved is the excavation for the construction of approximately 2,000 feet of highway tunnel under Atlantic Avenue, along with the reconstruction of the MBTA Red Line South Station Subway Station and the construction of a portion of the new MBTA “Silver Line.”
The sites to be excavated pass through a number of areas that the CA/T had previously determined to be contaminated. These areas were delineated on the contract drawings and in the specifications as “Clearance Areas” (where contamination had been confirmed) and “Potential Clearance Areas” (where contamination was suspected). The specifications required the contractor — here PKC — to conduct an “insitu sampling program” in these areas. The purpose of the in-situ sampling program was “to further characterize the Potential Clearance Material as either clearance or non-clearance material.” Based on the results of the testing program, the CA/T then determined the “(flinal delineation of the boundary between the Clearance Material or Non-Clearance Material.”
Once the Clearance Areas were set by the CA/T, all of the materials within the Clearance Areas had to be excavated in accordance with the “Contaminated Soil Excavation” specification section, which prescribed a number of excavation restrictions. The material from the Clearance Areas also had to be “disposed of... at a Non-RCRA Out-of-State Lined Landfill (or recycled at a recycling facility if materials are suitable and the Contractor can identify a facility to accept the material),” all in accordance with the ‘Transportation and *360 Disposal of Contaminated Material” specification section.
The material to be disposed of was broadly defined to include “soil, pavement, cobblestones, ballast, railroad ties, rocks, concrete pipes, and miscellaneous structures and debris.”
PKC entered into a subcontract with the plaintiff, Earth Tech Environment and Infrastructure, Inc. (“Earth Tech”) in March 1995. The subcontract work included the in-situ testing and the transportation and disposal of PAH/TPH contaminated soil.
Earth Tech, not PKC, performed the in-situ testing in the summer of 1995, and thereafter the CA/T set the final boundaries of the Clearance Area based on that testing. Earth Tech alleges in this case that this 1995 in-situ testing “establish(ed) the presence of contaminated clay at numerous levels and locations not shown on the original borings,” and contends that this constituted a differing site condition. Earth Tech, however, did not notify PKC of these alleged differing site conditions when discovered or at any time over the next four years.
Earth Tech began its transportation and disposal work in December 1995 and periodically performed that work into July of 1999. Earth Tech further alleges that on June 16, 1999, it encountered contaminated clay material in Clearance Area E. This material is said to have been rejected by Earth Tech’s soil recycling facility as containing too much clay to be recycled. Nevertheless, Earth Tech was ordered to remove the clay. From June 18 through July 15,1999, Earth Tech claims that it transported and disposed of the clay material from Clearance Area E to a landfill area at a much higher cost than non-clay material, and it seeks to recover the alleged extra cost in this lawsuit.
On July 29, 1999, Earth Tech, for the first time, notified PKC in writing of a claim for an equitable adjustment for the clay materials. In a letter dated September 17, 1999, Earth Tech stated that it considered “the presence of unforeseen contaminated clay material” to be a differing site condition pursuant to Sec. 4.04 of certain of the contract documents. In a December 30, 1999 letter, Earth Tech asserted that “the original borings... are not indicative of the actual conditions on the site with regard to the level/quantity of clay and the presence of contamination within the clay.”
In September 2000, Earth Tech submitted a more detailed “Claim for Differing Site Conditions” for the transportation and disposal of the contaminated clay from Area E of the Project. It further revised this claim submission in October 2000 and January 2001. Earth Tech asserted that “[i]n short, the contaminated clay is a differing site condition for which Earth Tech is entitled to an equitable adjustment under General Laws c. 30, Sec. 39N, as incorporated into Section 4.04, Division 1 of the Construction Contract.”
In February 2003, Earth Tech filed this lawsuit against PKC and Fidelity. It alleges that in 1997, and again in 1999, it was required to transport and dispose of certain contaminated clay materials which “had not been identified in the subcontract documents” and “could not have been foreseen by Earth Tech.”
In a deposition of an Earth Tech Rule 30(b)(6) deponent, Earth Tech stated that its claim is that its work was supposed to include transportation and disposal of only certain types of soils from the Clearance Areas. It contends that its work was limited to soil types A (brick, concrete, and granular historic fill), B (non-granular historic fill and other non-granular materials), and C (interface clay). It claims that type D soils (clay and till) are excluded from the scope of the subcontract.
The Rule 30(b)(6) witness further said that, unlike Earth Tech’s earlier differing-site-condition claim, its current claim is not based on any inaccuracies in the original boring logs.
Two different sections of Division 1 of the General Requirements and Covenants provide notice requirements, depending upon whether Earth Tech is pressing a differing-site-condition claim or some other form of equitable adjustment for a change. They are Sections 4.03 and 4.04.
Section 4.03 is entitled “Change Orders,” and reads in pertinent part as follow.
B. If the Contractor believes that any order from the Department should be treated as a Change Order, the Contractor shall notify the Engineer in writing, within three (3) Workdays after receipt of such order, identifying the order and stating with particularity the basis for regarding it as a Change Order.
E. If the Contractor intends to assert a claim for an equitable adjustment covering a change in the Work under this Subsection, Contractor must, within ten (10) Days after receipt of a written Change Order under Paragraph A above, or furnishing of a notice under Paragraph B above, submit to the Engineer a written statement concerning the claim with supporting documentation setting forth the nature and impact of the claim on the Contract Price, Contract Milestone(s), or Contract Time(s).
Section 4.04 is entitled “Differing Site Conditions.” It incorporates G.L.c. 30, Sec. 39N, and it reads in pertinent part as follows:
... A request for such an adjustment shall be in writing and shall be delivered by the party making such claim to the other party as soon as possible after such conditions are discovered . . .
1. The Contractor shall promptly, and before such conditions are disturbed!,] notify the Engineer in writing describing in full detail the:
(a) Subsurface or latent physical conditions at the site which Contractor maintains differ sub *361 stantially or materially from those in the Contract Documents.
(b) Unknown physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in Work of the character provide for in the Contract Documents.
The Engineer shall promptly investigate the conditions, and if the Engineer determines that such conditions as have been described in detail by the Contractor do exist and in fact do differ materially or substantially, a Change Order shall be processed accordingly. No such claim of the Contractor shall be allowed unless the Contractor has given the detailed notice specified, nor shall it be allowed if such conditions are disturbed prior to their investigation by the Engineer.
Neither Sec. 4.03 nor Sec. 4.04 was complied with by Earth Tech in connection with the claim(s) asserted in this action.
DISCUSSION
“Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.” M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87, 89 (2004); Kesler v. Pritchard, 362 Mass. 132, 134 (1972). Mass.R.Civ.P. Rule 56(c).
The Court will assess Earth Tech’s claims chronologically.
Earth Tech first asserted that the 1995 borings “established the presence of contaminated clay at numerous levels and locations not shown in the original borings.” However, it did not bring any claim for a differing site condition until 1999, four years after the condition was discovered. This was neither “promptly” nor “before such conditions [we]re disturbed,” as specifically required in Sec. 4.04. Nor was any of the required specificity provided.
The Court looks to the Massachusetts legal principles that apply to this kind of situation. The general proposition is well established.
On a public construction contract,... if the contractor encounters materially different conditions from those predicted in the plans, specification, preliminary borings and estimates, the contractor must follow the procedures spelled out in the contract. . . to adjust the price before unilaterally accruing expenses to be pursued later on breach of contract or quantum meruit theories . . . Generally, a failure by the contractor to invoke its remedies under the agreement . . . will preclude all relief. . . unless the contractor can demonstrate that the particular claim falls outside the contract, and because the agency’s conduct constitutes a true breach.
Glynn v. City of Gloucester, 9 Mass.App.Ct. 454, 460-61 (1980).
“A contractor who fails to adhere to the strict claims provision of a public works contract forfeits all rights of recovery of damages or extra compensation unless the agency waives compliance therewith or the contractor is excused from compliance.” Sutton Corp. v. MDC, 38 Mass.App.Ct. 764, 767 (1995). See also D. Federico Co. v. Commonwealth, 11 Mass.App.Ct. 248, 252-52 (1981).
If the contractor fails to comply with the statutory or contractual requirements, it can only recover if it shows that it was excused from compliance or that the owner waived compliance with the notice and claim provisions by showing “clear, decisive, and unequivocal conduct on the part of an authorized representative of the agency indicating that it would not insist on adherence to the agreement.” Glynn, supra, 9 Mass.App.Ct. at 462. See also Sutton Corp., supra, 38 Mass.App.Ct. at 768. In this regard, “knowledge on the part of the public agency alone is not sufficient to support a finding that the agency waived strict compliance with the damage provision of a public contract or that compliance was excused.” Id. See Glynn, supra, 9 Mass.App.Ct. at 462 n.10.
Earth Tech seeks to avoid the problems arising from its failure to abide by the notice provisions for the differing-site-condition claim, as well as the equitable-adjustment/change-order claim discussed below, by arguing that PKC’s actions in assisting Earth Tech to prepare and present its claim through PKC to CA/T, without PKC raising the issue of improper notice, constitutes an equitable estoppel or waiver preventing PKC from raising the issue now. This argument fails.
First, the claim being made initially, whether as one for a differing site condition or for an equitable adjustment, was a pass-through claim. Earth Tech’s claim as a subcontractor was being passed through PKC as the contractor .to CA/T the owner. As long as it remained in that posture, the issue of raising a notice defense or waiver thereof was for CA/T, not PKC, to assert. Only thereafter, when CA/T denied the claim, did it become some form of direct claim against PKC and its bonding company, Fidelity. By this time, however, there was no action by PKC that could under any interpretation of the law of equitable estoppel or waiver prevent it from raising the notice defenses.
Second, and tellingly, the subcontract contains a no-waiver provision in para. 20.1 that reads: “If Contractor [PKC] does not insist in any instance upon strict compliance with any of the provisions of this contract, or to exercise any options provided, this shall not be construed as a waiver of its right to thereafter require such compliance or to exercise such option.” Similarly, Section 7.38 of Division 1 — General Requirements and Covenants, provides:
All conditions, covenants, duties and obligations contained in this Contract can be waived only by written agreement. Forbearance or indulgence in any form or manner by a party shall not be con *362 strued as a waiver, nor in any way limit the legal or equitable remedies available to that party.
Still further, there is no factual basis alleged, or supported by affidavit or otherwise, that shows in any way that either CA/T or PKC clearly, decisively and unequivocally excused or waived the notice requirements for a differing-site-condition or an equitable-adjustment claim. Failure to raise the notice defense is hardly the same as clear, decisive, and unequivocal conduct indicating that the defense would not be relied upon. There is, therefore, no reason why either the differing-site-condition or the equitable-adjustment/change-order clauses’ notice requirements should not be strictly enforced.
Thus, even if Earth Tech has not — as it seems it has[2] — abandoned its differing-site-condition claim, its failure to comply with the contract requirements for notice thereof is fatal to that claim.
The more recent incarnation of Earth Tech’s claim suggests that it is an extra-work claim and, as such, would be subject to the Sec. 4.03 notice requirements.
As noted above, there is a three-workday notice requirement within which Earth Tech would have had to identify the situation and state with particularity the basis for regarding it as a Change Order. Still further, to assert a claim for an equitable adjustment covering a change in the work, Earth Tech must, within ten days after furnishing a three-workday notice, have submitted a written statement concerning the claim, with supporting documentation setting forth the nature and impact of the claim on the Contract Price, Contract Milestone(s), or Contract Time(s).
Again, Earth Tech has failed to meet these notice requirements. At best, the “order” that Earth Tech points to was the order to remove the clay materials from Clearance Area B, which was given on June 16, 1999. Earth Tech’s first written notice did not come until July 29, 1999, however, well more than 3 or 10 days after the challenged order. See Complaint, Para. 20. And the first documentation stating “with particularity the basis for regarding [the order] as a Change Order” did not come until 2004.
As with differing-site-condition claims, notices regarding change orders are also strictly enforced in Massachusetts. Particularly, “[i]n huge public works projects ... it is essential that these procedural requirements be followed precisely.” Newberg/Walsh J.V. v. MWRA, Suffolk Civil Action No. 96-1831-H, at 10-11 (Feb. 16, 1999). See Marinucci Bros. v. Commonwealth, 354 Mass. 141, 145 (1968); Glynn v. City of Gloucester, 21 Mass.App.Ct. 390, 394-95 (1986). Again, the failure to abide strictly by the notice requirements makes unenforceable Earth Tech’s claim for an equitable adjustment based upon a change order.
With regard to the claim against Fidelity, the surely, Earth Tech is faced with a statutory limitation on when such a claim must be filed. G.L.c. 149, Sec. 29 governs payment bonds on public construction projects. It provides that “(i]n order to obtain the benefit of such bond for any amount claimed due and unpaid at any time,” a claimant like Earth Tech must file suit against the surety “within one year after the day on which such claimant last performed labor or furnished labor, materials, equipment, appliances or transportation included in the claim ...” This one-year deadline has also been strictly enforced. See, e.g., General Electric Co. v. Lexington Contracting Corp., 363 Mass. 122, 123 (1973); D&P Equipment Corp. v. Harvey Construction Co., Inc., 5 Mass.App.Ct. 851 (1977).
The last work performed by Earth Tech on the Project occurred on July 15, 1999. This case, including the claim against Fidelity on the bond, was filed on February 3, 2003. Consequently, the claim on the bond is not timely and must be dismissed.
ORDER
For the foregoing reasons, the Defendants’ Motion for Summary Judgment, (Paper #23), is ALLOWED; and a final judgment dismissing the complaint, with each party to bear its own costs, shall enter.

 See footnote 3 on p. 6 of Earth Tech’s opposition to the present motion.