McHugh, J.
This is a dispute arising out of a construction contract. Under the contract, plaintiff, North Star Service, Inc., was to perform certain site preparation work for a hockey rink defendant, New England Sports Management Corporation, was building. Disputes arose with respect to a variety of matters and the parties were unable to resolve those disputes. This action followed.
Both sides now have moved for summary judgment. Defendant contends that plaintiffs claims are unsupportable as a matter of law and thus that judgment should enter in its favor. Plaintiff asserts that, not only are its claims valid, but that, on the present record, it has conclusively established defendant’s liability. In addition, plaintiff seeks summary judgment dismissing defendants’ counterclaims.
For the following reasons, the motions are decided in the following fashion:
1. Loam and Stump Removal
The contract between the parties stated that plaintiff was to
. . . [P]repar[e] . . . the site in accordance with the Sasaki Associates, Inc. Project Manual, SA 31655.04. The Contractor’s [i.e., plaintiffs] scope of work shall conform to the following:
A. Site preparation in accordance with Section 02100 of SA 31655.04 (Attachment A).
B. Earthwork in accordance with Section 02200 of SA 31655.04 (Attachment A).
Contract, §1.1. The contract further obligated plaintiff to “comply with all the requirements specified in the Project Manual and referenced documents and Order of Conditions, DEP File No. 212-546 (Attachment B).” Contract, §1.2.
Section 02200, Part 1.01, ofthe Project Manual was entitled “Work Included” and required plaintiff to do the following with respect to “earthwork;”
*492 Provide all equipment and materials, and do all work necessary to complete the earthwork which includes, but is not necessarily limited to the following:
1. Site excavation, filling, and rough grading to the limits indicated on the drawings.
2. Preparation of sub grade for footings, foundations, slabs, and landscaping. •
3. Sheeting, bracing and support of excavations as necessary.
4. Drainage and dewatering as necessary to perform work in the dry.
5. Placement and compacting of fills as required to achieve rough grades indicated.
Section 02200, Part 1.06, of the Project Manual dealt with “existing conditions” and said that
A. The Contractor shall become thoroughly familiar with the site, consult records and drawings of adjacent structures and of the existing utilities and their connections, and note all conditions which may influence the work of this Section.
B. By submitting a bid, the Contractor affirms that he has carefully examined the site and all conditions affecting work under this Section. No claim for additional costs will be allowed because of lack of full knowledge of existing conditions.
C. The Contractor may, at his own expense, conduct additional subsurface testing as required for his own information.
Part 1.07 of Section 02200 of the Project Manual was entitled “Information Not Guaranteed." That section provided as follows:
A. Information on the Drawings and in the Project Manual and Specifications relating to subsurface conditions, natural phenomena, and existing utilities and structures is from the best sources presently available. Such information is furnished only for the information and convenience of the Contractor, and the accuracy or completeness of this information is not guaranteed.
B. Plans, surveys, measurements, and dimensions under which the work is to be performed are believed to be correct, but the Contractor shall have examined them for himself during the bidding period, as no additional compensation will be made for errors and inaccuracies that may be found therein.
C. A “Preliminary Geotechnical Evaluation,...” has been prepared ... for use by the Site Engineer and Architect in the design of the project. A copy of this report is included as Appendix A.[1]
The Preliminary Geotechnical Evaluation appended to the contract contained test-boring diagrams and other information customarily found in such documents.
The final contractual document of immediate relevance had to do with the contract price. Section 3.1 of the Contract, entitled “Total Price” provided as follows:
The total contract price is agreed to be $300,250 allocated as follows:
a. Tree Work — Tree clearing, stumping site, stump removal[2] $32,500
d. Earth work — strip, stockpile and respread 2,000 yards of loam at 6-inch side depth on areas to be seeded for grass $9,300 Cut and fill 128,000 yards of earth $215,000
Against that backdrop, plaintiff makes two initial claims. First, it contends that it discovered a large group of buried tree stumps which, at substantial extra expense, it was required to excavate and grind up. Those buried tree stumps were not mentioned in the Plans, Specifications or Drawings and neither party anticipated their existence. Plaintiff claims, therefore, that it should be awarded extra compensation for the time and effort required to remove the tree stumps.
Second, plaintiff contends that it was required to, and did, remove more than 2,000 yards of loam and more than 128,000 yards of earth. It removed more than 2,000 yards of loam because it discovered a buried pocket of loam that neither party had anticipated and was required to remove that buried pocket before it could proceed with its other work.
Defendant maintains that the contract made no provision for extra payments for removal of unanticipated stumps, loam, earth or anything else and, indeed, expressly disclaimed the accuracy of the measurements the contract contained. According to defendant, plaintiff thus is entitled to no additional payments.
This was an integrated contract, i.e., the complete and final expression of the parties’ agreement. See generally, e.g., Ryder v. Williams, 29 Mass.App.Ct. 146, 150 (1990). Interpretation of the unambiguous terms of an integrated contract presents a question of law for the court. Lawrence-Lynch Corp. v. Department of Environmental Management, 392 Mass. 681, 682 (1984).
Here, dealing first with the tree stumps, there is no provision in the contract specifically dealing with buried stumps. Unlike some contracts, particularly those governing state and federal construction projects, there are no contractual provisions calling for price adjustments when unexpected conditions are encountered. Compare, e.g. Sutton Corp. v. Metropolitan District Commission, 423 Mass. 200, 205 n. 11 (1996); G.L.c. 30, §39N. On the contrary, the provisions of the contract quoted above not only required the contractor, here the plaintiff, thoroughly to familiarize itself with site conditions, but also expressly stated that contractual information regarding subsurface condi *493 tions, although compiled from the best sources then available was “not guaranteed.”[3] Moreover, Part 3.01(E) of Section 02200 of the Project Manual provided in pertinent part as follows:
Excavation shall include satisfactory disposal of excavated material not employed as fill materials:
2. Excavation material, other than top soil, which is not required for or is unsuitable for All material, shall be legally disposed of off-site.
In their agreement, therefore, the parties expressly addressed the possibility that plaintiff would encounter material it could not use for fill and they agreed that plaintiff would be responsible for its off-site disposition. Disposition of the unexpected tree stumps was unambiguously plaintiffs responsibility.
The same analysis disposes of plaintiffs contention that it is entitled to extra payments for the unanticipated loam and for the “extra” dirt it was required to remove while excavating. Plaintiffs contention that, because the pricing provisions of Section 3.1 of the Contract mentioned 2,000 yards of loam and 128,000 yards of earth, it was entitled to extra payments if it removed more materials is unpersuasive. Contractual language must be interpreted in the context in which that language appears. Starr v. Fordham, 420 Mass. 178, 190 (1995); Restatement (Second) of Contracts, §200. In the context of this contract, it is clear that the quantities listed in §3.1 were estimates alone.
2. The Counterclaims
Disposition of the motion insofar as it affects the counterclaims requires less discussion. The provisions of §A-1 of the contract requiring payment of $1,000 per day for each day of delay in completing the project are, on this record, an unenforceable penalty. However denominated — -and this clause is expressly called a “penalty” — a liquidated damage clause is unenforceable if the amount of liquidated damages is grossly disproportionate to actual damages. Shiparo v. Grinspoon, 27 Mass.App.Ct. 596, 603, 605 (1989). As the party seeking enforcement of the provision, defendant has the burden of proof at trial on the question whether actual damages are reasonably related to the amount of the liquidated sum. As a result, if no evidence on the relationship between the liquidated sum and anticipated actual damages is introduced at trial, the imposition of a $l,000-per-day payment for delay could only be viewed as a penalty. Because it will have the burden of proof at trial, defendant now has the burden of coming forward with concrete evidence showing that the actual damages it anticipated are reasonably related to the $l,000-per-day payment obligation of the contract imposed on plaintiff. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). Defendant, however, has failed to come forward with any such evidence whatsoever.
As far as the claim under Chapter 93A is concerned, the record reflects simply that, in the context of a settlement proposal that never materialized, plaintiff stated that it would abandon the claims on which it bases this action. Defendant has cited no case, and this Court is aware of no case, holding that commencement of an action to recover on a claim that one offered to abandon if a dispute could be resolved amounts to a violation of G.L.c. 93A. Finally, there is a genuine issue of material fact on this record regarding whether the grading work plaintiff performed was nine inches higher, when finished, than the plans called for it to be. In that regard, there is no conflict between the affidavits of Wristen and Orcutt and their deposition testimony. In his deposition, Wristen testified as follows: “We’ve received a site that was not what we wanted in configuration, and I [accepted] it reluctantly ... [I] accepted a site eight inches higher than what I wanted, and I reluctantly accepted that and paid [plaintiff]. The site was not what I thought was in the contract.” Wristen Deposition at 53. In his deposition, Orcutt, the Assistant Project Manager said as follows in response to the following question:
Q. Did New England ever issue any back charge against [plaintiff]?
A. We debated and decided not to. Orcutt Deposition at 50.
At this stage, the burden is on plaintiff to establish the nonexistence of any genuine issue of material fact regarding the proper performance of grading work and, until it does so, defendant has no obligation to establish anything in regard to its counterclaim. Smith v. Massimiano, 414 Mass. 81, 85-86 (1993). The same principle applies to the claim for lost income stemming from an inability to rent ice. Plaintiff simply has not met its burden and the issues of improper grading and lost income remain for trial.
ORDER
In light of the foregoing, it is hereby ORDERED that:
1. Defendant’s motion for summary judgment should be, and it hereby is, ALLOWED.
2. Plaintiffs motion for summary judgment establishing defendant’s obligation to pay extra money to plaintiff for removal of loam, removal of additional earth and disposition of buried tree stumps should be, and it hereby is, DENIED.
3. Plaintiffs motion for summary judgment dismissing that portion of defendant’s counterclaim which seeks to impose on plaintiff liability for a contractually specified delay penalty, and for damages under G.L.c. 93A should be, and it hereby is, ALLOWED.
*494 4. Plaintiffs motion for summary judgment dismissing defendant’s counterclaim to the extent that the counterclaim seeks to impose on plaintiff damages for improper site grading and lost income should be, and it hereby is, DENIED.

 Part 1.01(A) of the Project Manual contained information similar to that found in Part 1.07(A).

 Part 1, §3.01 of the Project Manual provided, among.other things, that stumps shall be removed to their full depth. Roots figure 3 in. and larger shall be removed to a depth of 2 ft. below finished grade. Stumps shall be legally disposed of off-site.

 Nothing in the record would support a conclusion that information, or lack of information, concerning buried stumps was negligently or fraudulently omitted from the contract’s description of subsurface conditions. See generally, e.g., Glynn v. City of Gloucester, 21 Mass.App.Ct. 390, 395-96, rev. denied, 396 Mass. 1107 (1986).