REYNOLDS BROS., INC., & another[1] *vs.* COMMONWEALTH.[2]

Suffolk. September 4, 1991. - February 24, 1992.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Contract*, Public works, Performance and breach. *Public Works*, Delay.

General Laws c. 30, § 39O (*a*), afforded no relief to public works contrac-
tors seeking recovery from the Commonwealth for losses allegedly
caused by various delays, hindrances, and interferences with their per-
formance, in the absence of any order by the department delaying the
work; moreover, any exclusion of the contractors from the worksite
prior to the execution and delivery of the contract did not constitute a
suspension, delay, or interruption as contemplated by the statute. [5-7]
Claims by public works contractors against the Commonwealth for losses
allegedly caused by various delays, hindrances, and interferences with
their performance were precluded by the "no damages for delay" provi-
sion of their contract. [7-8]

---

[1]Reynolds Equipment Corp.

[2]Third and fourth party complaints were filed in the Superior Court.
They are not before us on appeal.

CIVIL ACTION commenced in the Superior Court Department on February 13, 1984.

The case was heard by *John C. Cratsley*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joel Lewin* for the plaintiffs.

*Brison S. Shipley*, Special Assistant Attorney General, for the Commonwealth.

O'CONNOR, J. The plaintiffs appeal from an entry of summary judgment in favor of the Commonwealth on Count I of the complaint.[3] The plaintiffs, to whom we shall collectively refer as Reynolds, allege that they are entitled to recover for various delays, hindrances, and interferences in the performance of a contract between themselves and the Commonwealth, acting through its Department of Public Works (department). The contract involves the reconstruction of sidewalks and streets at eleven locations known generally as Downtown Crossing. Reynolds asserts a right to recover not only for losses caused by delays, but also for loss of productivity due to the department's changing of the work schedule, the department's denying Reynolds access to the job site, and the discovery of unanticipated subsurface conditions. We affirm the judgment entered in the Superior Court.

In ruling on the summary judgment motion, the judge appears to have relied on two department audit reports submitted by the Commonwealth in support of the motion and on an affidavit of William P. Reynolds, president of the plaintiff corporations at the relevant period, which was submitted in opposition to the motion. No one contests, and therefore we assume, the appropriateness of those documents to establish the facts of the case for summary judgment purposes. Based on those documents, the following facts appear not to be in dispute. By letter dated July 13, 1978, Reynolds was notified

---

[3]Although the complaint contains three counts, we are informed by the Commonwealth that the plaintiffs have withdrawn Count II and that the claim set forth in Count III has been settled. We proceed on that assumption.

as follows: "At a meeting of the Public Works Commission held on July 12, 1978, the contract for Transit and Traffic Improvement Program in the City of Boston was awarded to you. Subject to the concurrence of the Federal Highway Administration." The contract, only selected parts of which have been included in the record appendix, contains a timetable for work to be performed at eleven locations in downtown Boston. It provides that a large portion of the work should be completed by September 4, 1978, in order to accommodate bus traffic, and that approximately seventy-two per cent should be completed by October 10, 1978, in order to accommodate Christmas shoppers.

The contract also provides that "in general, all work may begin upon award of contract unless otherwise provided herein." Reynolds planned to start work within five days after notice of the contract award but did not do so. Because the project involved Federal aid, the department required project approval from the Federal Highway Administration, which it received by letter dated July 21, 1978. The executed contract was not delivered to Reynolds until August 7, 1978, and Reynolds did not begin work until August 14. At that time, the department created several priority areas and delayed work in other areas, which in effect rearranged Reynolds's work schedule. Reynolds's schedule was also disrupted by the work of two other contractors working in areas where it was difficult for more than one contractor to work at one time. Although the contract specified June 30, 1979, as a completion date for the whole project, the actual completion date was one year later.

In August, 1978, Reynolds notified the department of its claim for delay and disruption damages, which was denied in 1981 by the department claims committee. Reynolds filed an amended claim on January 25, 1983, claiming damages of $154,053. While an appeal was pending before the board of contract appeals, Reynolds began this action in the Superior Court. The amended complaint essentially asserts in Count I that "[b]ased upon the contract documents, the Plaintiffs planned their work in a specific sequence in order to obtain

the maximum productivity for their men and equipment. The Plaintiffs were unable to perform their work in accordance with the planned schedule because the Defendant prevented the Plaintiffs from commencing the work in a timely fashion and because the Defendant imposed a substantial change in the contract schedule." In addition, the amended complaint alleged that Reynolds's performance was delayed to their detriment by the work of other contractors.

The contract contains in § 8.05 a "no damages for delay" provision that says in relevant part: "The Contractor hereby agrees that he shall have no claim for damages of any kind on account of any delay in commencement of the work or any delay or suspension of any portion thereof, except as hereinafter provided.

"Provided, however, that if the [Public Works] Commission in [its] judgment shall determine that the performance of all or any major portion of the work is suspended, delayed, or interrupted for an unreasonable period of time by an act of the Department in the administration of the Contract, or by the Department's failure to act as required by the Contract within the time specified in the Contract (or if no time is specified, within a reasonable time), and without the fault or negligence of the Contractor, an adjustment shall be made by the Department for any increase in the actual cost of performance of the Contract (excluding profit and overhead) necessarily caused by the period of such suspension, delay, or interruption. No adjustment shall be made if the performance by the Contractor would have been prevented by other causes even if the work had not been so suspended, delayed, or interrupted by the Department."

General Laws c. 30, § 39O (1990 ed.), requires certain public contracts, including the contract involved in this case, to contain the following provision: "(*a*) The awarding authority may order the general contractor in writing to suspend, delay, or interrupt all or any part of the work for such period of time as it may determine to be appropriate for the convenience of the awarding authority; provided however, that if there is a suspension, delay or interruption for fifteen days or

more or due to a failure of the awarding authority to act within the time specified in this contract, the awarding authority shall make an adjustment in the contract price for any increase in the cost of performance of this contract but shall not include any profit to the general contractor on such increase; and provided further, that the awarding authority shall not make any adjustment in the contract price under this provision for any suspension, delay, interruption or failure to act to the extent that such is due to any cause for which this contract provides for an equitable adjustment of the contract price under any other contract provisions."

It is unclear from the record whether the provision required by c. 30, § 39O, was expressly set forth in the contract but, in any event, the statute makes clear that the contract must be read as containing that provision. Also, to the extent there may be conflict between the expressed contract and the statutorily required provision, the required provision controls. Neither party contends otherwise.

Reynolds's primary argument is that, despite the contract provision that, "in general, all work may begin upon award of contract unless otherwise provided herein," the department failed to issue to Reynolds a formal "notice to proceed" until nearly one month after Reynolds had been notified that the contract had been awarded to them. The result, Reynolds says, was that Reynolds could not begin work as soon as planned, and was therefore forced to reschedule the work in a much less cost-efficient sequence. Reynolds argues that this was a delay "due to a failure of the awarding authority to act within the time specified in [the] contract," as provided in the second clause of G. L. c. 30, § 39O, and therefore a price adjustment was required. We have not been made aware of any provision in the contract requiring the department to issue a notice to proceed or preventing Reynolds from proceeding in the absence of such a notice. However, even if there were such expressed or implied obligations, we conclude that Reynolds was not entitled to a notice to proceed promptly after receiving notice that "[a]t a meeting of

the Public Works Commission held on July 12, 1978, the contract . . . was awarded to [Reynolds]."

General Laws c. 30, § 39O (*a*), is far from a model of clarity. However, it appears that the second clause, beginning with the words, "provided however," was intended by the Legislature to modify or qualify the first clause, that is, the function of the second clause is to lessen the scope, impact, or severity of the first clause. That construction would be consistent with the meaning ordinarily given to the term "provided." See Black's Law Dictionary 1224 (6th ed. 1990). Thus, we read the second clause to mean that the contractor will be entitled to a price adjustment only when the awarding authority, here the department, exercises its statutory right to order the contractor in writing to delay its performance, *and* there is either (1) a delay of fifteen or more days resulting from that order, or (2) following such a written order, the authority fails to take action within a specified time as required by the contract which results in a delay of any length. Here, there was no written order as called for in the first clause of c. 30, § 39O. The result is that the second clause, on which Reynolds relies, was not triggered.

There is a second reason why Reynolds cannot prevail on its argument that it was entitled to a notice to proceed in mid-July. Despite the phraseology of the July notice announcing that, at a meeting of the Public Works Commission (commission), the contract had been awarded to Reynolds, subject to the "concurrence of the Federal Highway Administration," the contract as a matter of law was not "awarded" within the meaning of that contract term until it was executed and delivered on August 7, 1978. In this connection, we note that the department audit report dated January 23, 1986, one of the documents submitted by the Commonwealth in support of its summary judgment motion, states: "It is difficult to read the contract statement . . . that 'all work may begin upon award of the contract' as meaning that the [commission] vote constitutes 'award.' Completion of the award *process* [including execution and completion of the contract document] is clearly implied." The Common-

wealth does not make this argument. In fact, the Commonwealth states in its brief that the contract was awarded on July 12, 1978. Nevertheless, we are satisfied that the contract was not "awarded" within the meaning of the parties' contract before it was executed and delivered. It would not make sense to interpret the contract, which did not become effective until August 7, 1978, as providing that the contractor was entitled to commence work before that date.

We conclude that Reynolds is not aided by G. L. c. 30, § 39O, both because the department did not order in writing a suspension, delay, or interruption of Reynolds's performance, and because any exclusion of Reynolds from the work site until mid-August, 1978, did not constitute a suspension, delay, or interruption "due to a failure of the awarding authority to act within the time specified in [the] contract."

Afforded no relief by G. L. c. 30, § 39O, Reynolds's claims are precluded by the "no damages for delay" provision of the contract. Section 8.05 specifically precludes damages for delays "in commencement of the work or any delay or suspension of any portion thereof, except . . . that if the Commission in [its] judgment shall determine that the performance of all or any major portion of the work is suspended, delayed, or interrupted for an unreasonable time by an act of the Department in the administration of the Contract, or by the Department's failure to act as required by the Contract . . . an adjustment shall be made." Here, since it is clear that the commission did not make the requisite determination, the exception does not apply, and the claims based on delay are precluded. We reject the argument that, because Reynolds does not assert "delay" as much as it claims "hindrances" and "interferences" with the orderly performance of its work resulting in a loss of productivity, the no damages for delay provision is inapplicable. Hindrances and interferences, Reynolds contends, are not covered by § 8.05. We are satisfied that there is no significant distinction between the hindrances and interferences to which Reynolds points and the alleged delay in the start of the project and delays caused by

the work of other contractors, which are precluded by the no damages for delay provision.

Finally, Reynolds claims damages due to the unanticipated discovery of underground areaways, which are openings beneath sidewalks that form parts of the basements of adjacent buildings. General Laws c. 30, § 39N (1990 ed.), provides for extra compensation in appropriate circumstances when unanticipated underground areaways are discovered. In this case, Reynolds was compensated for its increased costs due to unanticipated underground areaways. It appears that Reynolds now seeks additional compensation for the delay in its work schedule occasioned by the areaways. Here again, the claim is precluded because it falls squarely within the no damages for delay clause.

*Judgment affirmed.*