Kottmyer, J.
I. INTRODUCTION
This action arises out of a public construction contract entered into between defendant R.W. Granger & Sons, Inc. (“Granger”) and defendant town of Franklin (“Franklin”). The contract involves the construction of the Franklin Elementary & Middle School in Franklin, Massachusetts. Granger, as the general contractor, entered into a subcontract with plaintiff JRJ Construction Co., Inc. (“JRJ”), pursuant to which JRJ agreed to perform the veneer plaster work at the school. Defendant United States Fidelity & Guaranly (“USF&G”) acted as Granger’s surety, and defendant Drummey, Rosane & Anderson, Inc. (“DRA”) was the architect on the project. JRJ has filed several claims against the defendants, asserting that they directed JRJ to perform work that was not required under the contract, which resulted in extra labor and costs. JRJ has filed ten claims against Granger for breach of contract (Counts I, III-VI, IX), misrepresentation (Count II), deceit by silence (Count VIII), negligence (Count X), and violations of G.L.c. 93A (Count XIII). JRJ has filed two claims against DRA for making bad faith decisions (Count VII), and for violations of G.L.c. 93A (Count XIII). Three claims have been filed against Franklin by JRJ for unjust enrichment (Counts XI & XV), and violations of c. 93A (Count XIII). And three claims have been filed against USF&G by JRJ for default on payment and performance bonds (Count XII), violations of G.L.c. 93A (CountXIII), and damages in excess of the penal sum (Count XIV).
Granger filed cross claims against Franklin for breach of contract (Count I) and indemnification (Count II). USF&G also filed cross claims against Franklin for indemnification (Counts I & II), and DRA filed a counterclaim against JRJ for breach of contract (Count I).
Granger and USF&G have moved for partial summary judgment, arguing that JRJ released them from most, if not all, of the contested work. DRA also filed a motion for summary judgment, arguing: (1) that DRA had no duty to JRJ because the contract documents obligated DRA only to consider requests of the general contractor (Granger), and it is undisputed that Granger never requested the payments that JRJ seeks in this case; (2) that JRJ waived its claims against DRA by signing a release; (3) that JRJ failed to provide timely written notice of its claims; (4) that JRJ’s claims against DRA are barred by the economic loss doctrine; and (5) that JRJ’s 93A claim fails because DRA did not engage in conduct that is actionable under c. 93A, nor did it engage in trade or commerce as required under c. 93A.[2] JRJ has filed oppositions to both motions, and Granger filed a partial opposition to DRA’s motion.
Because the original summary judgment record was so confused as to preclude meaningful review, the Court issued an order dated February 1, 1999 to Granger and JRJ requiring, inter alia, that they document, by affidavit and otherwise, timely compliance with the notice provisions under the contract for each claim for which recovery is sought. Granger and JRJ responded to the Court’s order by supplying summaries with supporting materials. In addition, Granger filed a renewed motion for partial summary judgment, which again relies primarily on the doctrine of release, but makes three additional arguments. The additional arguments are as follows: that several of JRJ’s claims *387 are barred by a “no damages for delay” clause under the contract, that several of JRJ’s claims have been accounted for, and that JRJ failed to give timely written notice on certain claims.
II. SUMMARY JUDGMENT RECORD
The material facts, as taken from the summary judgment record and viewed in the light most favorable to JRJ, are as follows. On October 1, 1994, Granger entered into a public construction contract with the town of Franklin for the construction of the Franklin Elementary and Middle School, in Franklin, Massachusetts. (See General Contract between Granger and the town of Franklin (“General Contract”)). On October 3, 1994, Granger, as the general contractor, entered into a subcontract with JRJ, which provided that JRJ would perform the veneer plaster work for the project for the sum of $328,900. (See Subcontract between Granger and JRJ (“Subcontract”)). DRA, the architect on the project, prepared the specifications and plans on the project. (See id.). DRA also served as Franklin’s representative and was responsible for administering the construction contract. (See General Contract, Article 4.2.1.)
A.Disputed Work
During construction, JRJ performed certain work that it considered to be outside the scope of the contract documents. (See Statement of Factual and Legal Issues of JRJ in Opposition to Granger and USF&G’s Motion for Partial Summary Judgment. (Aff. of Joseph Schena, Ex. 8 (“Schena Aff. I”), par. 3.) This work generally falls into two categories: (1) work that was directed by Granger, which JRJ considered to be the responsibility of other subcontractors, or outside the scope of its responsibility under the contract, and (2) work resulting from DRA changes, drawing revisions, and interpretations. (See JRJ’s Memorandum in Opposition to Granger and USF&G’s Renewed Motion for Partial Summary Judgment (“JRJ Opposition to Granger and USF&G Motion II”), Exhibits 1-53 and Aff. of Joseph Schena (“Schena Aff. II”).)
With regard to this disputed work, JRJ submitted requests for extra work change orders to Granger, and JRJ was told that these requests were sent to DRA. (See Schena Aff. II, pars. 4-5.) Under the general contract, a “change order” is defined as:
a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following:
. 1 a change in the Work,
.2 the amount of the adjustment in the Contract Sum, if any; and
.3 the extent of the adjustment in Contract Time, if any.
(General Contract, Article 7.2.1.) DRA and Granger directed JRJ to perform the disputed work, and to invoice the work upon completion. (See Schena Aff. II, par. 7.) DRA and Granger also told JRJ that the disputed work would be resolved by arbitration or litigation. (See id., par. 8.)
Towards the end of the project, Granger informed JRJ that it did not have all of the extra work claims from JRJ. (See id., par. 10.) On October 11, 1996, JRJ sent a letter to Granger referencing over fifty unpaid invoices and proposals for work on the project. (See Granger and USF&G’s Renewed Motion for Partial Summary Judgment, Aff. of Timothy O’Neil, Ex. II (“O’Neil Aff. II”), par. 4 and Ex. L.) The letter stated that Granger owed $276,320.31 to JRJ for work incurred on the project. (See id.) JRJ sent Granger copies of JRJ’s claims on November 26, 1996. (See Schena Aff. II, par. 10.)
B.Releases
During the course of JRJ’s work on the project, JRJ submitted requisitions for payment and Granger made payments. (See Granger and USF&G’s Renewed Motion for Partial Summary Judgment (“Granger and USF&G’s Renewed Motion”), Aff. of Tim O’Neil, Ex. I (“O’Neil Aff I”), par. 5.) As part of the regular requisition process, subcontractors, including JRJ, were required to execute partial waiver and release forms (“releases”) when they were paid for their work. (See id., par. 6.) During the course of the project, JRJ executed a number of releases. (See id., par. 7.) On August 7, 1996, JRJ signed a release which stated:
[JRJ] hereby represents and warrants that the total value of its contract, or the Materials supplied by it, or to be supplied by it to the Project is $331,445.00 on the aforementioned Project and that there are no charges or costs in excess of said $331,445.00. [JRJ] further represents and warrants that it has been paid the sum of $322,048.00 up to and including the date set forth below.
(Granger and USF&G’s Renewed Motion, O’Neil Aff I, par. 9 and Ex. B.)
On October 10, 1996, JRJ signed the final Partial Payment and Release, acknowledging that Granger had paid it $328,900.00, but noting on the bottom of the form that there was a “BALANCE OF $250,629.79 LEFT ON 8/22/96 REQUISITION.” (See id., Ex. B.)
C.Procedure For Resolving Disputes
The contract between JRJ and Granger provides that:
[t]he Subcontractor agrees to be bound to the Contractor by the terms of the hereinbefore described plans, specifications (including all general conditions stated therein) and addenda No. 1, 2, and to assume to the Contract all the obligations and responsibilities that the Contractor by those documents assumes to the Town of Franklin, Town Administrator’s Office . . . except to the extent that provisions contained therein are by their terms or by law applicable only to the Contractor.
*388 (Subcontract, par. 1(a).) The general contract between Granger and the town of Franklin outlines the procedure for resolving claims, like those advanced by JRJ in this case. The relevant portions of the contract provide:
4.3.1 Definition. A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term “Claim” also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be made by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.
4.3.2 Decision of Architect. Claims arising prior to final payment or the earlier termination of the Contract shall be referred initially to the Architect for action as provided in Paragraph 4.4.
4.3.3 Time Limits on Claims. Claims by either party must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be made by written notice. Any change or addition to a previously made Claim shall be made by timely written notice in accordance with this Subparagraph 4.3.3.
4.3.7 Claims for Additional Cost. If the Contractor claims that any acts or omissions of the Owner or Architect, including any instructions or orders, whether oral, written, by Drawings, or otherwise, involve extra cost or time, and the Contractor has not received a written acknowledgment by the Owner or Architect that extra payment will be made or time extended on account thereof, the Contractor shall promptly so notify the Architect in writing of such Claim and shall not proceed with the Work relating to such Claim until the Contractor has received further written order to proceed in accordance with Paragraph 4.4 ... No Claim by the Contractor on account of such acts, omissions, instructions or orders shall be valid unless the Contractor has so notified the Architect, before proceeding, and has received the further written order to proceed.
(General Contract and Supplementary General Conditions).
D. The No Damages For Delay Clause
In the contract between Granger and the town of Franklin, there is a “no damage for delay” clause, which provides:
8.3.5 The Contractor hereby agrees that the Contractor shall have no claim for damages of any kind against the Owner or the Architect on account of any delay in the commencement of the Work and/or any delay or suspension of any portion of the Work, whether such delay is caused by the Owner, the Architect, or otherwise. The Contractor acknowledges that the Contractor’s sole remedy for any such delay and/or suspension will be an extension of time as provided in this Article.
(General Contract, Supplementary General Conditions, Article 8.3.5.)
V. DISCUSSION
The court may grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving parfy bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving parly’s case, or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. See Pederson, 404 Mass. at 17. The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts to defeat the motion. See LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
A. R.W. Granger & Sons, Inc. and USF&G’s Renewed Motion For Partial Summary Judgment
1. Introduction
JRJ has made ten claims against Granger. JRJ’s claims against Granger are as follows: (1) breach of contract for nonpayment of extra work claims in the amount of $276,320.31 (Count I); (2) misrepresentation and deceit (same damages as Count I) (Count II); (3) breach of implied contract — quantum meruit (Count III); (4) breach of contract due to over-aggressiveness (Count IV); (5) breach of contract due to the following: (a) overaggressiveness, causing JRJ damages in the amount of $142,720.11, (b) refusal to provide sufficient scaffolding, causing JRJ damages in the amount of $10,425.28, and (c) failure to provide adequate dumpsters and chutes, causing JRJ damages in the amount of $26,705.24 (CountV); (6) breach of contract due to the following: (a) Granger requiring that JRJ provide painters’ touch up work, which was *389 outside of the scope of the contract and caused damages in the amount of $36,638.76, (b) and additional costs due to window frames not being in place, which caused JRJ to change the sequence of its work (Count VI); (7) deceit by silence because Granger withheld from JRJ SKA drawings and information which revised and increased JRJ’s work (Count VIII); (8) breach of contract due to (a) Granger’s failure to provide necessary hoisting pursuant to Article 3.4.1 of the general contract, and (b) failure to provide adequate dumpsters and chutes, causing damages in the amount of $26,705.24 in excess waste removal (Count IX); (9) negligence in scheduling JRJ’s work, causing damages of $212,720 (CountX); and (10) violations of G.L.c. 93A for misdirection, refused payments, misrepresentations, deceit by silence, deceit, and un-businesslike acts and practices (Count XIII).
JRJ has also filed three claims against USF&G for default on payment and performance bonds (Count XII), violations of G.L.c. 93A (Count XIII), and damages in excess of the penal sum (Count X3V). Granger and USF&G now move for partial summaiy judgment on these claims, arguing that JRJ released Granger from liability; that some claims have been accounted for; that some claims are barred under the “no damages for delay” clause; and that some claims are untimely.
2.The Doctrine of Release
Granger and USF&G’s renewed motion for partial summaiy judgment relies primarily on the doctrine of release. Granger and USF&G argue that the release signed by JRJ on August 7,1996, bars claims for work done prior to the release date, which incorporates all of JRJ’s claims for extra work.
In the absence of fraud, a broad release should be given effect even if the parties did not have in mind all the wrongs which existed at the time of the release. See Schuster v. Baskin, 354 Mass. 137, 140-141 (1968). JRJ has raised an issue of fact, by means of an affidavit, as to whether Granger fraudulently induced JRJ to sign the release. The affidavit of Joseph Schena (“Schena”), the General Manager of JRJ, states that “JRJ was told [presumably by Granger] at the time of signing the releases that our requests for extra work change orders, that were disputed, would be preserved despite signing the partial payment releases.” (Schena Aff. I, par. 9.) Although Schena’s statement lacks detail, it is sufficient to create a material question of fact as to whether JRJ’s execution of the release was fraudulently obtained. Accordingly, the motion for summary judgment is denied on these grounds.
3.Some of JRJ’s Claims Have Been Accounted For
Granger and USF&G raise this argüir ant for the first time in their renewed motion for partial summaiy judgment. Granger and USF&G assert that change orders have been issued and accounted for with regard to JRJ’s claims within Granger and USF&G’s tabs 3, 6, 7, 10, 12 and 21; and, as such, they have been paid. (See Granger and USF&G’s Supplemental Memorandum in Support of Its Renewed Motion for Partial Summary Judgment (“Granger and USF&G’s Supplemental Memorandum”), at 11-12). Upon review of Granger and USF&G’s memorandum and accompanying exhibits, however, it is unclear how these exhibits affirmatively show that these specific JRJ claims have been paid. Additionally, JRJ has submitted an affidavit in which Schena states that JRJ never received change orders with regard to the claims within Granger and USF&G’s tabs 3, 6, 7, and 12. (See Aff. of Joseph Schena in Support of JRJ’s Opposition to Granger and USF&G’s Motion for Summaiy Judgment Requested by Court Order (“Schena Aff. Ill”), pars. 19, 22, 23, 28). Also, Schena states that the claim within Granger and USF&G’s tab 21 was accepted by DRA as to merit, but not as to value. (See id., par. 37.) Accordingly, the motion for summaiy judgment on these grounds is denied because there are genuine issues of material fact as to whether the claims in question were accounted for.
4.The No Damages for Delay Clause
Granger and USF&G raise this argument for the first time in their renewed motion for partial summary judgment. Granger and USF&G assert that several of JRJ’s claims are barred by a “no damages for delay” provision within the general contract. In the contract between Granger and the town of Franklin, there is a “no damage for delay" clause, which provides that
[t]he Contractor hereby agrees that the Contractor shall have no claim for damages of any kind against the Owner or the Architect on account of any delay in the commencement of the Work and/or any delay or suspension of any portion of the Work, whether such delay is caused by the Owner, the Architect, or otherwise. The Contractor acknowledges that the Contractor’s sole remedy for any such delay and/or suspension will be an extension of time as provided in this Article.
(General Contract, Supplementary General Conditions, Article 8.3.5.) The contract between JRJ and Granger provides that “(t]he Subcontractor agrees to . . . assume to the Contract all the obligations and responsibilities that the Contractor... assumes to the Town of Franklin ...” (Subcontract, par. 1(a).) Therefore, the “no damages for delay” clause was incorporated into the subcontract. Granger and USF&G argue that JRJ’s claims within Granger and USF&G’s tabs 9, 13, 14, 23, 26, and 32 are claims arising out of delays and are therefore barred. (See Granger and USF&G’s Supplemental Memorandum, at 13-14.)
It is well settled in Massachusetts that a “no damage for delay” clause is enforceable, and precludes recovery of damages on account of delay. See B.J. Harland Electrical Co., Inc. v. Granger Bros., Inc., 24 Mass.App.Ct. 506, 509 (1987) (and cases cited), rev. denied, 400 Mass. 1105 (1987), rev. denied, 401 Mass. *390 1101 (1987). The question therefore is whether JRJ’s claims fall within the scope of the clause.
In Granger Bros., the court distinguished clauses that referred only to delay damages, and clauses that referred to damages due to “delays or hindrances.” See id. at 510. The court pointed out that other jurisdictions had determined that delay damages referred only “to the cost of an idle workforce” and did not include extra expenses incurred as a result of hindrances. See id. The distinction was of no consequence in Granger Bros., however, because the clause at issue spoke to damages due to “delay or hindrance.” See id.
This distinction was addressed by the Supreme Judicial Court in a more recent case. See Reynolds Bros., Inc. v. Commonwealth, 412 Mass. 1 (1992). In Reynolds Bros., the plaintiff, a contractor, sued the Commonwealth for losses caused by delays and loss of productivity. The delays and loss of productivity were due to changes in the plaintiffs work schedule, the denial of the plaintiffs access to the job site, and the discovery of unanticipated subsurface conditions. See id. at 2. The “no damages for delay" clause did not speak to damages caused by hindrances. See id. at 4. The clause provided: ‘The contractor hereby agrees that he shall have no claim for damages of any kind on account of any delay in commencement of the work or any delay or suspension of any portion thereof...” Id. at 4.
The plaintiff argued that the “no damages for delay” provision was inapplicable to its claims because the emphasis of its claims was not based on “delay,” but was based on “hindrances” and “interferences” with the orderly performance of its work, resulting in a loss of productivity. See id. at 7. The SJC rejected this argument and determined that the “no damages for delay” clause applied to the plaintiffs claims. See id. at 7-8.
a.JRJ Claim within Granger and USF&G Tab 9
This claim involves seal caulking work, which was invoiced on July 2, 1996 for $13,581.25. (See O’Neil Aff. II, Tab 9; JRJ Ex. 18.) According to JRJ, Granger did not make the work area available at a time when the work could be performed efficiently. (See Schena Aff. Ill, par. 25.) When JRJ performed the work, the finish trades had already performed their work, such as painting, finish flooring and rugs. As a result, it took longer to perform the seal caulking because the seal caulking had to be performed with more care in order avoid harm to the finished surfaces. JRJ charged for the actual time it took, which resulted in a higher price than the original proposal. (See O’Neil Aff. II, Tab 9; JRJ Ex. 18; Schena Aff. III, par. 25.)
JRJ argues that “(t]he issue is not delay, but whether Granger made the work area accessible.” (Schena Aff. III, par. 25.) This claim is similar to the plaintiffs claim in Reynolds Bros., Inc.—that hindrances and interferences affected “the orderly performance of its work resulting in a loss of productivity[.]” Reynolds Bros., Inc., 412 Mass. at 7. As such, this claim falls within the scope of the “no damages for delay” clause and JRJ may not recover the difference between the proposed and actual labor time. The entire claim is also barred for failure to provide timely written notice. See infra.
b. JRJ Claim within Granger and USF&G Tab 13
This is a claim for JRJ’s lost time while waiting for the arrival and installation of wall insulation by Globe Drywall, another subcontractor. (See JRJ Summary of Extra Work Claims in Response to Court Order (“JRJ Summary”), at 9; O’Neil Aff. II, Tab 13; JRJ Ex. 22; Schena Aff. III, par. 29.) JRJ invoiced this claim on July 5, 1996 for $7,904.84. (See JRJ Ex. 22.) Schena asserts that “[t]his is not a time delay claim to the owner” (see Schena Aff. III, par. 29), however, this claim clearly falls within the “no damage for delay” clause, and is therefore barred.
c. JRJ Claim within Granger and USF&G Tab 14
This is a claim for “lost time correcting frame work, incorrectly performed by Globe Drywall!,]" which was invoiced on July 5, 1996 for $43,464.33. (JRJ Ex. 23; see also JRJ Summary, at 9-10.) Itis not clear whether this claim falls within the “no damages for delay” clause. Even though JRJ states that this is a claim for “lost time,” it appears that part of the claim is for extra labor correcting Globe Drywall’s work (i.e., “extra labor in cutting the board”), and that part of the claim is for lost productivity due to problems with Globe Drywall’s work (i.e., the process was slowed down due to having to use two different size screws for three different gauges of metal stud). (See Schena Aff. Ill, par. 30.) Because the record does not clearly establish whether this claim is for extra time or for corrective work, or, if both, in what proportions, summary judgment is denied on this ground.
d. JRJ Claim within Granger and USF&G Tab 23
This is a claim for labor performed when JRJ returned to certain windows to complete work. The work could not be done when JRJ originally was working at the windows because the windows had not been installed. (See JRJ Ex. 32.) JRJ invoiced this claim on July 31, 1996, for $8,625.40. (See id.) In essence, this claim is for damages due to loss of productivity as a result of work being performed out of sequence. Therefore, it is subject to the “no damages for delay" clause. See Reynolds Bros., Inc., 412 Mass. at 7.
e. JRJ Claim within Granger and USF&G Tab 26
This claim is for JRJ lost time incurred in using lifts and rolling scaffolding instead of using full staging. According to JRJ, Granger was required to provide full staging under Article 1.05 of the general contract. (See *391 JRJ Summary, at 14; JRJ Ex. 35, Schena Aff. Ill, par. 41; O’Neil Aff. II, Tab 26.) JRJ invoiced this claim on July 31, 1996, in the amount of $8,236.02. This claim is for lost time due to alleged inadequate scaffolding, which caused a decrease in productivity. Therefore, it is subject to the no damages for delay clause. See Reynolds Bros., Inc., 412 Mass. at 7.[3]
f. JRJ Claim within Granger and USF&G Tab 32
This claim is for work that was not able to be performed during the ordinary course of JRJ’s operations. JRJ was required to return to certain rooms to finish its work after carpeting was installed, floors were finished and walls were painted, resulting in JRJ having to perform the work with extraordinary care. The claim is also for an extra item of work performed in Room 1051. JRJ invoiced this claim on August 19, 1996, for an amount of $ 1,623.26. (See JRJ Summary, at 16; JRJ Ex. 41; Schena Aff. III, par. 47; O’Neil Aff. II, Tab 32.)
JRJ argues that this is a change in sequence of operations claim, and not a delay claim. (See Schena Aff. III, par. 47.) This claim is similar to the plaintiffs claim in Reynolds Bros., Inc.—that hindrances and interferences affected “the orderly performance of its work resulting in a loss of productivity[.]” Reynolds Bros., Inc., 412 Mass. at 7. As such, this claim falls within the “no damages for delay” clause. Although the extra item of work performed in Room 1051 may not fall within the scope of the clause, the issue is moot because the entire claim is barred for failure to provide timely written notice. See infra.
5. Lack of Timely Notice
Granger and USF&G assert that certain of JRJ’s claims are untimely because JRJ did not comply with the claims provision of the general contract.[4] Granger and USF&G did not raise this argument in their motion or memorandum in support of their motion for partial summary judgment, but it was raised within the affidavit of Timothy O’Neil (“O’Neil”), the project manager for Granger. (See O’Neil Aff. II.)
“On a public construction contract, if actions or requirements of the public agency necessitate changes in the work as it progresses, thereby causing the contractor to perform extra work or incur added expense, . . . the contractor must follow the procedures spelled out in the contract ... to adjust the price before unilaterally accruing expenses to be pursued later on breach of contract or quantum meruit theories.” Glynn v. Gloucester, 21 Mass.App.Ct. 390, 394-95 (1986) (quoting Glynn v. Gloucester, 9 Mass.App.Ct. 454, 460 (1980)), rev. denied, 396 Mass. 1107 (1986).
Pursuant to the subcontract between JRJ and Granger, JRJ assumed “all the obligations and responsibilities that the Contractor [Granger] . . . assume[d] to the Town ...” (Subcontract, par. 1(a).) As such, JRJ was required to follow the procedures set forth within the general contract. Under the general contract, timely written notice of claims was required. The notice provision states that:
[c]laims by either party must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be made by written notice.
(General Contract, Article 4.3.3.)
A claim is defined under the contract as “a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term ‘Claim’ also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract.” (Id., Article 4.3.1.) JRJ’s claims for extra work are clearly “claims” as defined by the contract, and accordingly, JRJ was required to give notice to Granger of its claims within 21 days of the event giving rise to its claim, or within 21 days after JRJ first recognized the condition giving rise to its claim.
Granger and USF&G have raised this defense to eighteen of JRJ’s claims.[5] On sixteen of the eighteen claims, notwithstanding the Court’s order of February 1, 1999, JRJ has failed to provide any evidence that it gave notice within 21 days of the event giving rise to the claim, or within 21 days after JRJ first recognized the condition giving rise to the claim.[6] Therefore, when the facts are viewed in the light most favorable to JRJ, there is no genuine issue of material fact with regard to whether timely written notice was given to Granger on these claims. Accordingly, summary judgment is allowed on these claims.[7]
There are, however, genuine issues of material fact with regard to two of the claims challenged by Granger and USF&G. The first claim involves an invoice dated May 6, 1996, in the amount of $3,207.20. The claim arises out of DRA’s issuance of SKA drawings on March 11, 1996, which clarified the work that was required of JRJ. In response to these SKA drawings, JRJ submitted a change proposal on March 28, 1996, for $510.70, and a revised change proposal on May 6, 1996, for $3,207.20. (See JRJ Summary, at 4; JRJ Ex. 5; O’Neil Aff. II, Tab 5.) When the facts are viewed in the light most favorable to JRJ, there are genuine issues of material fact as to whether JRJ’s first proposal was timely. The second proposal, however, was late because it was submitted more than 21 days after the SKA drawings were issued. Therefore, summary judgment is allowed on the second proposal (of $3,207.20), but denied on the first proposal (of $510.70).
The second claim concerns an invoice dated July 8, 1996, in the amount of $36,638,76, It involves the *392 touch up of cracks, chips and sanding, including a punch list received through July 2, 1996. (See JRJ Summary, at 10; JRJ Ex. 24; O’Neil Aff. II, Tab 15.) Viewing the facts in the light most favorable to JRJ, there are genuine issues of material fact as to whether this claim was timely because the date of the punch list (July 7, 1996) is within 21 days of the date of the invoice. Accordingly, summary judgment is denied as to this claim.
a. Arguments Raised by JRJ
JRJ raised several arguments in response to Granger and USF&G’s assertion that JRJ has failed to give timely notice.
i.Waiver
A contractor to a public construction contract may recover for claims that were not filed in compliance with the contract’s procedures if it can show that the public authority has waived compliance with the requirements of the contract. See Glynn, 9 Mass.App.Ct. at 461. In order to establish waiver, the contractor must show “that there was clear, decisive, and unequivocal conduct on the part of an authorized representative of the agency indicating that it would not insist on adherence to the agreement." Id. at 462 (footnote and citations omitted).
JRJ argues that Granger waived the contract’s claims procedure by accepting responsibility in writing for a number of JRJ’s claims. (See JRJ Opposition to Granger and USF&G Motion II, at 5; see also Schena Aff. II, par. 17.) With one exception, however, these claims have not been challenged by Granger as being precluded for lack of timely notice. (See Schena Aff. II, par. 17; supra note 4.) Only one of the claims was challenged by Granger for lack of timely notice (the claim for $13,581.25 with an invoice date of July 2, 1996). There is no evidence within the record that Granger accepted responsibility for this claim, or otherwise engaged in conduct that would support a finding of waiver with regard to this claim. (See JRJ Ex. 18.) Accordingly, JRJ’s assertion that Granger waived the claims procedure is without merit.[8]
ii.Claims Procedure Modified by Project History
Second, JRJ argues that the claims procedure was modified by project history. (See JRJ Opposition to Granger and USF&G Motion II, at 5-6.) JRJ, however, has not adduced facts sufficient to support a finding that the contractual requirements for timely notice were modified, notwithstanding the Court’s order of February 1, 1999.
iii.True Breach of Contract
Third, JRJ argues that certain of its claims are true breach-of-contract claims, and, as such, they are not precluded by the notice provision of the contract. (See JRJ Opposition to Granger and USF&G Motion II, at 6-7.) “Generally, a failure by the contractor to invoke its remedies under the agreement. . . will preclude all relief, unless the contractor can demonstrate that the particular claim falls outside the contract, and because of the agency’s conduct, constitutes a true breach.” Glynn, 9 Mass.App.Ct. at 461 (citing United States v. Utah Constr, & Mining Co., 384 U.S. 394, 404-05, 412-13 (1966)). However, even in a claim for a true breach, the contractor is required to comply with the written notice and claim provisions of the contract. See Glynn, 21 Mass.App.Ct. at 397-98. “Were it otherwise, the contractual and statutory framework for the resolution of disputed claims would be virtually meaningless.” Id. at 398. Accordingly, JRJ was required to comply with the notice provision of the contract regardless of whether its claims are for a true breach.[9]
iv.Minor Deviations May Be Authorized Orally under G.L.c. 30, §391
Fourth, JRJ argues that its claims involve minor deviations from the terms of the contract, which can be authorized orally under G.L.c. 30, §391. (See JRJ Opposition to Granger and USF&G Motion II, at 7-8.) General Laws c. 30, §391 provides that “(n]o willful and substantial deviation from [a public construction contract’s] plans and specifications shall be made unless authorized in writing by the awarding authority ... to approve such deviations.” Minor deviations from the terms of such a contract do not require written authorization. See Lawrence-Lynch Corp. v. Department of Envtl. Management, 392 Mass. 681, 684 (1984).
This argument misses the mark. Granger and USF&G are not arguing that these claims were willful and substantial deviations from the contract’s plans and specifications, which required written authorization. Rather, Granger and USF&G are arguing that JRJ failed to provide timely written notice as required under the contract.
6. Conclusion
Granger and USF&G’s motion for partial summary judgment is allowed as to the following claims because they are barred by the “no damages for delay” clause: invoice dated July 5, 1996 for $7,904.84; and invoice dated July 31, 1996 for $8,625.40.
The motion is also allowed as to the following claims because there are no issues of material fact with regard to whether timely notice was given: invoice dated April 12, 1996 for $1,676.47; invoice dated May 6, 1996 for $3,207.20 (but not as to invoice dated March 28, 1996 for $510.70); invoice dated July 8, 1996 for $13,363.58; invoice dated July 8, 1996 for $18,229.20; invoice dated July 31, 1996 for $558.78; invoice dated July 31, 1996 for $3,636.65; invoice dated July31,1996 for $933.54; invoice dated August 19,1996 for $1,960.06; invoice dated August 19, 1996 for $2,437.82; invoice dated August 21, 1996 for $6,649.82; invoice dated September 5, 1996 for $851.12; invoice dated September 5, 1996 $598.40; *393 invoice dated September 18, 1996 for $158.37; and invoice dated September 18, 1996 for $699.11.
Finally, the motion is allowed as to the following claims both because they are barred under the “no damages for delay” clause and because there are no issues of material fact with regard to whether timely notice was given: invoice dated July 2, 1996 for $13,581.25; invoice dated July 31, 1996 for $8,236.02; and invoice dated August 19, 1996 for $1,623.26.
As to the remaining claims which are the subject of Granger and USF&G’s motion for partial summary judgment there are genuine issues of material fact which preclude summary judgment.
B. DRA’s Motion for Summary Judgment
1.Introduction
JRJ has filed two claims against DRA. The first claim alleges that DRA is liable under Article 4.2.12 of the general contract for interpretations and decisions that were not made in good faith, and that were partial to Granger and the town of Franklin (Count VII).[10] The second claim alleges that DRA’s “bad faith” decisions in resolving JRJ’s disputes, and misrepresentations as to the work required of JRJ under the contract documents constitute violations of chapter 93A (Count XIII).
DRA now moves for summary judgment on these claims, arguing: (1) that DRA had no duty to JRJ because the contract documents obligated DRA only to consider requests of the general contractor (Granger), and it is undisputed that Granger never requested the payment that JRJ seeks in this case; (2) that JRJ waived its claims against DRA by signing a release; (3) that JRJ failed to provide timely written notice of its claims; (4) that JRJ’s claims against DRA are barred by the economic loss doctrine; and (5) that JRJ’s c. 93A claim fails because DRA did not engage in conduct that is actionable under c. 93A, nor did it engage in trade or commerce as required under c. 93A.
2.DRA Has No Duty To JRJ
DRA asserts that, as a matter of law, “JRJ has no right to recover against DRA because the contract documents obligated DRA only to consider requests of the general contractor (Granger) and it is undisputed that Granger never requested payment that JRJ seeks in this case.” (See DRA Memorandum, at 4.) According to DRA, the contract documents established a mechanism that required Granger to approve the claims of subcontractors and submit them to the town before payment could be made. (See id.; see also Beenhouwer Aff., DRA Ex. A, par. 5.) It is DRA’s contention that Granger did not approve and submit JRJ’s claims to the town, and, consequently, DRA was under no duty to make decisions on the claims. (See DRA Memorandum, at 5.)
This argument may have merit as to some of JRJ’s claims; however, the materials cited to in support of this argument were not made part of the summary judgment record. (See id. at 4; Ex. C.) Consequently, DRA has failed to meet their burden of affirmatively demonstrating that there is no genuine issue of material fact. In any event, this argument would have failed as to most of JRJ’s claims. In its response to the Court’s order dated February 1, 1999, Granger filed an affidavit of O’Neil, which raises genuine issues of material fact as to whether a number of JRJ’s claims were forwarded to DRA. (See O’Neil Aff. II, Tabs 1, 4, 5, 8, 10, 11, 16-18, 19, 21, 22, 24, 33, 35-37, 39, 42, 43.)
3.JRJ Waived Its Claims against DRA by Signing a Release
DRA argues that JRJ cannot seek payment from DRA on claims that are barred by the August 7, 1996 release. As discussed earlier, because there are genuine issues of material fact as to whether this release was fraudulently obtained, this argument fails.
4. JRJ Failed to Provide Timely Written Notice of its Claims
DRA argues that, pursuant to the contract documents, JRJ was required to provide timely written notice of its claims, and that any right JRJ had to extra compensation under its claims was not perfected due to its failure to give timely written notice. (See DRA Memorandum, at 7.)[11]
As discussed earlier, JRJ has failed to adduce evidence that it gave written notice within 21 days of the event giving rise to the claim, or within 21 days after JRJ first recognized the condition giving rise to the claim as to each of the claims listed within footnote twelve of this decision.[12] Therefore, when the facts are viewed in the light most favorable to JRJ, there are no genuine issues of material fact with regard to whether timely notice was given on these claims. Accordingly, DRA’s motion for summary judgment is allowed on these claims.[13] As to the remaining claims, there are material issues of fact as to whether timely notice was given, and therefore summary judgment is denied on these claims.[14]
5. The Economic Loss Doctrine
The economic loss doctrine precludes recovery in negligence actions for purely economic losses. See Clark v. Rowe, 428 Mass. 339, 342 (1998). DRA argues that JRJ’s losses are purely economic, and, consequently, summary judgment should be allowed under this doctrine. (See DRA Memorandum, at 8-10.) However, JRJ’s claims against DRA are for bad faith decisions (Count VII) and violations of G.L.c. 93A (Count XIII). (See Complaint, pars. 95-104, 162-177.) The economic loss doctrine is inapplicable to these claims. See Clark, 428 Mass. at 342; see also Nota Constr. Corp. v. Keyes Assocs., Inc., 45 Mass. App. Ct. 15, 20 (1998) (“An exception to the doctrine permits recovery *394 for economic losses resulting from negligent misrepresentation” (footnote and citation omitted)); Arthur D. Little Intern., Inc. v. Dooyang Corp., 928 F.Sup. 1189, 1205 (D. Mass. 1996) (“The economic loss rule does not apply to harm caused by intentional misrepresentations” (citations omitted)). Accordingly, summary judgment is denied on this ground.
7. Chapter 93A
DRA argues that summary judgment should be granted on JRJ’s chapter 93A claim because DRA did not engage in actionable conduct under c. 93A, and because DRA did not engage in “trade or commerce” as required under c. 93A. (See DRA Memorandum, at 11-13.)
In Count XIII, JRJ alleges that DRA violated c. 93A by making bad faith decisions in resolving inquiries and disputes relating to the scope of JRJ’s work under the contract documents. (See Complaint, pars. 172-74.) JRJ also alleges that DRA misrepresented what was required of JRJ under the contract. (See id., par. 176.) Such conduct is actionable under c. 93A. See Nota Constr. Corp., 45 Mass.App.Ct. at 21-22 (determining that a subcontractor’s claims against an architect for misrepresentations with regard to the architect’s plans and specifications and bad faith decisions in resolving the subcontractor’s disputes was actionable conduct under c. 93A).
Finally, DRA argues that JRJ’s c. 93A claim fails because DRA did not engage in “trade or commerce” as required under the statute. (See DRA Memorandum, at 12.) DRA asserts that the recent Supreme Judicial Court ruling in First Enterprises Ltd. v. Cooper, 425 Mass. 344 (1997), controls this issue. DRA’s reliance on First Enterprises, however, is misplaced. In First Enterprises, an attorney who filed a false legal claim against his clients’ adversaries was not liable under c. 93A §§2 and 11 because the attorney had no commercial relationship with the adversaries. See id. at 347-48. The false statements made by the attorney related to an internal business dispute rather than a dispute involving a commercial marketplace transaction. See id. When the facts are viewed in the light most favorable to JRJ, the dispute between DRA and JRJ is not an internal business dispute. Therefore, DRA’s motion for summary judgment on JRJ’s chapter 93A claim is denied.
IV. ORDER
A. Granger and USF&G
For the foregoing reasons, Granger and USF&G’s motion for partial summary judgment is ALLOWED on all of the counts against Granger and USF&G to the extent that such counts are based on the following claims: invoice dated April 12, 1996 for $1,676.47; invoice dated May 5, 1996 for $3,207.20 (but not as to invoice dated March 28, 1996 for $510.70); invoice dated July 2, 1996 for $13,581.25; invoice dated July 5, 1996 for $7,904.84; invoice dated July 8, 1996 for $13,363.58; invoice dated July 8, 1996 for $18,229.20; invoice dated July 31, 1996 for $8,625.40; invoice dated July 31, 1996 for $8,236.02; invoice dated July 31, 1996 for $558.78; invoice dated July 31, 1996 for $3,636.65; invoice dated July 31, 1996 for $933.54; invoice dated August 19, 1996 for $1,960.06; invoice dated August 19, 1996 for $2,437.82; invoice dated August 19, 1996 for $1,623.26; invoice dated August 21, 1996 for $6,649.82; invoice dated September 5, 1996 for $851.12; invoice dated September 5, 1996 $598.40; invoice dated September 18, 1996 for $158.37; and invoice dated September 18, 1996 for $699.11. In all other respects, Granger and USF&G’s motion for partial summary judgment is DENIED.
B. DRA
For the foregoing reasons, DRA’s motion for summary judgment is ALLOW/ED on all of the counts against DRA to the extent that they are based on the following claims: invoice dated January 30, 1996 for $1,574.23; invoice dated May 6, 1996 for $3,207.20 (but not as to invoice dated March 28, 1996 for $510.70); invoice dated June 12, 1996 for $2,104.33; invoice dated July 2, 1996 for $341.02; invoice dated July 2, 1996 for $440.42; invoice dated July 5, 1996 for $43,464.33; invoice dated July 8, 1996 for $33,687.59; invoice dated July 8, 1996 for $18,229.20; invoice dated July 8, 1996 for $2,849.33; invoice dated July 8, 1996 for $284.97; invoice dated July 31, 1996 for $933.54; invoice dated August 19, 1996 for $1,568.05; invoice dated August 19, 1996 for $1,960.06; invoice dated August 19, 1996 for $4,166.43; invoice dated August 19, 1996 for $1,387.18; invoice dated August 19, 1996 for $2,437.82; invoice dated August 29, 1996 for $17,622.37; invoice dated September 5, 1996 for $851.12; and invoice dated September 18, 1996 for $158.37. In all other respects, DRA’s motion for summary judgment is DENIED.

 The town of Franklin did not move for summary judgment. On July 21, 1997, a default was entered against Franklin under Mass.R.Civ.P. 55(a). Subsequently, Franklin filed a motion to set aside the default, and on December 16, 1997, Franklin’s motion was allowed by this Court. As of the date of this decision, Franklin has not filed an answer to the claims against it, and no further action has been taken by the parties.

 This claim is also barred for failure to provide timely written notice. See infra.

 This defense was raised with regard to eighteen of JRJ’s claims against Granger and USF&G; these claims are as follows: invoice dated 4/12/96 for $1,676.47; invoice dated 5/6/96 for $3,207.20; invoice dated 7/2/96 for $13,581.25; invoice dated 7/8/96 for $18,229.20; invoice dated 7/8/96 for $36,638.76; invoice dated 7/8/96 for $13,363.58; invoice dated 7/31/96 for $933.54; invoice dated 7/31/96 for $558.78; invoice dated 7/31/96 for $8,236.02; invoice dated 7/31/96 for $3,636.65; invoice dated 8/19/96 for $1,960.06; invoice dated 8/19/96 for $2,437.82; invoice dated 8/19/96 for $1,623.26; invoice dated 8/21/96 for $6,649.82; invoice *395 dated 9/5/96 for $851.12; invoice dated 9/5/96 $598.40; invoice dated 9/18/96 for $158.37; and invoice dated 9/18/96 for $699.11. (See O’Neil Aff. II, at Tabs 2, 5, 9, 15, 16, 20, 24-26, 29, 32-34, 38, and 41-44.)

 See supra note 4.

 Tese claims are as follows: invoice dated 4/12/96 for $1,676.47; invoice dated 7/2/96 for $13,581.25; invoice dated 7/8/96 for $13,363.58; invoice dated 7/8/96 for $18,229.20; invoice dated 7/31 /96 for $933.54; invoice dated 7/31/96 for $558.78; invoice dated 7/31/96 for $8,236.02; invoice dated 7/31/96 for $3,636.65; invoice dated 8/19/96 for $1,960.06; invoice dated 8/19/96 for $2,437.82; invoice dated 8/19/96 for $1,623.26; invoice dated 8/21/96 for $6,649.82; invoice dated 9/5/96 for $598.40; invoice dated 9/5/96 for $851.12; invoice dated 9/18/96 for $158.37; and invoice dated 9/18/96 for $699.11. (See JRJ Summary and supporting materials; Schena Aff. III.)

 See supra note 6.

 Additionally, JRJ asserts that Granger and DRA waived the claims procedure by directing JRJ to perform the disputed work. (See JRJ Opposition to Granger and USF&G Motion II, at 4-5; see also Schena Aff. II, par. 7.) However, a directive to perform work, notwithstanding the existence of a dispute, does not constitute a waiver of the contract’s claims procedures.

 JRJ also argues that Glynn is inapplicable to its claims against Granger (and presumably DRA) because these claims are not against a public agency. (See JRJ Opposition to Granger and USF&G Motion II, at 5-6.) This distinction is without significance, however, because JRJ does not dispute that the claims arise out of a public construction contract. Accordingly, JRJ’s claims against Granger and DRA fall within the ambit of Glynn.

 Article 4.2.12 of the general contract states:
Interpretations and decisions of the Architect will be consistent with the intent and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.
G.L.c. 30, §39J also addresses the decisions of architects under public construction contracts. It states;
Notwithstanding any contrary provision of any contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building or public works by the commonwealth, or by any county, city, town, district, board, commission or other public body, when the amount of the contract is more than five thousand dollars in the case of the commonwealth and more than two thousand dollars in the case of any county, city, town, district, board, commission or other public body, a decision, by the contracting body or by any administrative board, official or agency, or by any architect or engineer, on a dispute, whether of fact or law, arising under said contract shall not be final or conclusive if such decision is made in bad faith, fraudulently, capriciously, or arbitrarily is unsupported by substantial evidence, or is based upon error of law.

 DRA does not state to whom JRJ was required to give notice (DRA or Granger), however, it appears that JRJ was required to give notice to Granger, and Granger, in turn, would forward it to DRA.

 These claims are as follows: invoice dated 1/30/96 for $1,574.23; invoice dated 5/6/96 for $3,207.20 (but not as to invoice dated March 28, 1996 for $510.70 (see supra, at 18)); invoice dated 6/12/96 for $2,104.33; invoice dated 7/2/96 for $341.02; invoice dated 7/2/96 for $440.42; invoice dated 7/5/96 for $43,464.33; invoice dated 7/8/96 for $33,687.59; invoice dated 7/8/96 for $18,229.20; invoice dated 7/8/96 for $2,849.33; invoice dated 7/8/96 for $284.97; invoice dated 7/31/96 for $933.54; invoice dated 8/19/96 for $4,166.43; invoice dated 8/19/96 for $1,387.18; invoice dated 8/19/96 for $1,568.05; invoice dated 8/19/96 for $1,960.06; invoice dated 8/19/96 for $2,437.82; invoice dated 8/29/96 for $17,622.37; invoice dated 9/5/96 for $851.12; and invoice dated 9/18/96 for $158.37.

 See supra note 12.

 These claims are as follows: invoice dated 5/6/96 for $2,220.70; invoice dated 6/12/96 for $897.79; invoice dated 7/8/96 for $9,135.62; and invoice dated 7/8/96 for $4,196.20.