Sikora, J.

INTRODUCTION

Plaintiff Israel Borges (“Borges”) has brought this tort action for bodily injuries. Defendants Sterling Suffolk Racecourse, Inc., LLC and Belle Isle, LP (“defendants”) have moved, pursuant to Mass.R.Civ.P. 56, for summary judgment. For the reasons discussed below, defendants’ motion will be ALLOWED.
BACKGROUND[1]
Borges, a trainer of thoroughbred race horses, has brought this tort action for bodily injuries arising out of an incident which occurred on February 14, 1996. On that date, Borges alleges that he sustained injuries when he slipped and fell on ice while on property at *669 the Suffolk Downs Track owned and controlled by the defendants. The defendants move for summary judgment on the grounds that Borges’ claim is barred because he executed a stall application which included a comprehensive release of liability in favor of the defendants.
Borges opposes the defendant’s motion and argues that the comprehensive release contained in the stall application was not in effect on the date on which his alleged injury occurred. Borges bases his argument on two grounds. First, Borges argues that the comprehensive release contained in the stall application includes a heading stating “Fall Meeting — Opening October 20, 1995.” Borges contends that this language indicates that the comprehensive release in the stall application was in effect only in the later part of 1995 and not on February 14, 1996, the date on which he sustained his injuries. Second, Borges argues that the Massachusetts Racing Commission issues a racing license to the defendants each calendar year. He reasons that the comprehensive release he signed was not in effect on February 14,1996, because the defendants’ racing license expired on December 31, 1995, approximately three months after he signed the stall application.
The stall application at issue provides in pertinent part:
Suffolk Downs, its officers, agents or employees shall not under any circumstances be liable for any injuries or damages to person, horses or property sustained to or by any horse owners, trainers, jockeys, their agents, servants, or employees while on the grounds of Suffolk Downs. All risks of injury or damage to person, property or horse by fire, theft, accident, negligence, intentional or criminal act, or otherwise are assumed by such owners, trainers and jockeys, their agents, servants and employees, whether caused directly or indirectly by active or passive negligence of Suffolk Downs by its agents or by the condition of the premises or by individuals, property, things or horses, lawfully or unlawfully on the premises, or by Act of God or by any other reason or cause whatsoever.
The top portion of the reverse side of the application, the side which Borges signed, contained in bold and large print the instruction: “IMPORTANT— TERMS AND CONDITION — READ CAREFULLY.” The portion of the application which Borges signed was also printed in bold and large print, and read: “NOTICE TO TRAINERS,” which was followed by the following instruction, again in large print: “I HEREBY CERTIFY THAT I HAVE READ THIS STALL APPLICATION, THAT THE INFORMATION CONTAINED IN IT IS TRUE AND I AGREE TO BE BOUND BY ITS TERMS, CONDITIONS AND PROVISIONS.”
Defendants claim that the stall application was in effect for the 1995-1996 racing season. John Morrisey, the racing secretary at Suffolk Downs, stated in his deposition that the stall application was in effect for the entire 1995-1996. John Morrisey further stated that the racing season began on October 20, 1995 and ended on June 8, 1996.

DISCUSSION

A court will grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time Inc., 404 Mass. 14, 17 (1989). Once the moving party demonstrates the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Mass.R.Civ.P. 56_. Summary judgment, where appropriate, may be entered against the moving party or may be entered as to certain issues, but not others which present a genuine issue of material fact. Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976.)The nonmov-ing party cannot defeat the motion for summary judgment merely by resting on his or her pleadings or on bare assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The interpretation of a contract is generally a question of law for the court to determine. Lawrence-Lynch Corp. v. Department of Environmental Management, 392 Mass. 681, 682 (1984); Monadnock Display Fireworks, Inc. v. Andover, 388 Mass. 153, 157 (1983). In the construction of a written contract, words that are plain and free from ambiguity must be construed in their usual and ordinary sense where no inconsistency results or where there is no controlling contrary indication in the instrument of other intent. Massachusetts Municipal Wholesale Electric Co. v. Danvers, 411 Mass 39, 45-46 (1991). The court is to construe a contract to give reasonable effect to each of its provisions. J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986). Every phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable. The pertinent language is to be construed in the context of all the other *670 phraseology contained in the instrument. J.A. Sullivan Corp., supra at 795. The document must be viewed in a manner that will permit it to function as a workable and harmonious means for carrying out and effectuating the intent of the parties. Id.
Massachusetts courts have consistently held that releases which would preclude a party from pursuing future claims arising out of negligence are enforceable. Lee v. Allied Sports Associates, Inc., 349 Mass. 544, 550 (1965); Cormier v. Central Mass. Chapter of Nat’l Safety Council, 416 Mass. 286, 288-89 (1993). These decisions have acknowledged that a right which has not yet arisen may be made the subject of a covenant not to sue or to be released, and a party may validly exempt itself from liability which it might subsequently incur as a result of its own negligence. Lee, 349 Mass. at 550 (1965). Absent fraud or duress, a party who signs a release is bound by its terms whether or not he reads and understands the release. Cormier, 416 Mass. At 288.
In the absence of a specific requirement, the time for performance of a contract does not extend forever but only for a reasonable time. Powers, Inc. v. Wayside, Inc. of Falmouth, 343 Mass. 686, 690-91 (1962). In determining what is a reasonable time for a contract of indefinite duration to remain in effect, a court should consider the nature of the contract, the probable intention of the parties, and the attendant circumstances. Charles River Park, Inc. v. Boston Redevelopment Authority, 28 Mass.App.Ct. 795, 814 (1990) (citations omitted). “Where the evidence is in dispute and open to different inferences, the question whether an act has been done within a reasonable time after the happening of a certain event is ordinarily a question of fact, but where . . . the facts are not in dispute the question becomes one of law.” Id. (citation omitted). With these analytical principles in mind, we now turn to a consideration of the factual allegations and legal arguments presented by the parties with respect to the case at bar.
The only issue that this court must decide is whether the stall application and comprehensive release that Borges signed was in effect on February 14, 1996, the day on which he sustained his injuries. The answer is affirmative.[2]
Borges argues that the stall application which contains the comprehensive release from liability expired on December 31, 1995, because (1) December 31, 1995, was the date on which the defendants’ racing license expired; and because (2) the stall application contained a heading stating “Fall Meeting — Opening October 20, 1995.” The defendants, however, argue that these factors do not govern the duration of the stall application. The defendants maintain that the parties intended that the duration of the comprehensive release contained in the stall application run for the entire season, which began in September of 1995 and concluded in June of 1996. As a result, argue the defendants, the comprehensive release from liability was in effect on February 14, 1996, the date on which Borges incurred his injuries.
The conduct of the parties indicates that they intended the comprehensive release of liability contained in the stall application contract to remain in effect throughout the racing season. Several factors support this conclusion. First, the stall application contained no expiration date on which the comprehensive release would cease to remain in effect. Second, Borges continued to store his horse in the defendants’ stall well after December 31,1995, the date on which Borges claims that the comprehensive release of liability ceased to remain in effect. Third, although Borges continued to store his horse in defendants’ stall after December 31, 1995, he did not execute a second stall application for that time period.
Several other circumstances lead to the same conclusion. Borges’ horse was a racing horse. Furthermore, Borges intended to use the horse for racing purposes. Likewise, the defendants own and operate a race track for horses. Moreover, the racing season at defendants’ race track extended from September of 1995 to June of 1996. No material circumstances of the parties’ relationship changed at any time between the time of their agreement and the time of the accident.
Borges’ argument that the expiration of the defendant’s racing license ended the duration of the comprehensive release contained in the stall application is unpersuasive. The defendants’ racing license, which expired on December 31, 1995, and which was thereafter promptly renewed gave the defendants the right to have races, not to store horses. The expiration of the defendant’s racing license, therefore, lacks bearing on the duration of the comprehensive release contained in the stall application.
Viewing these circumstances together with the nature of the stall application, it is most likely that the parties intended the stall application and the comprehensive release from liability to remain in effect throughout the racing season. As a result, the comprehensive release applied to the accident of February 14, 1996, the day on which Borges sustained his injuries. Consequently, Borges’ action for negligence against the defendants is barred.

ORDER

For the foregoing reasons, the court must ALLOW the defendants’ Sterling Suffolk Racecourse, Inc., LLC and Belle Isle, LP’s motion for summary judgment.

 In evaluating a motion for summary judgment, the court must rely both on facts not in dispute and on disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently, the facts as set forth in this decision are presented in the light most favorable to the plaintiffs and should not be misunderstood as findings of the court.

 Borges is not arguing that he was fraudulently induced into signing the release. Likewise, he is not arguing that he was under duress when he signed the release.